## INSURANCE COMPANY v. WOLFF.

1. A took out a policy of insurance upon the life of her husband. The premium was payable annually on the first day of November. The policy stipulated for the payment of the amount of the insurance within sixty days after due notice and proof of the death of the insured, subject, however, to certain express conditions. One of these conditions provided, that, if the premiums were not paid on or before the days mentioned for their payment, the company should not be liable for the sum insured, or any part of it, and that the policy should cease and determine. Another condition provided, that, if the insured resided in any part of the United States south of the 33d degree of north latitude, except in California, between the 1st of July and the 1st of November, without the consent of the company previously given in writing, the policy should be null and void. The policy declared that agents of the company were not authorized to make, alter, or discharge contracts, or waive forfeitures; but the company, notwithstanding this provision, sent renewal receipts signed by its secretary; and their use, when countersigned by its local manager and cashier, was subject entirely to the judgment of its local agent. It was his habit to give such receipts whenever the premiums were paid after the time stipulated. His mode of dealing with persons taking out policies at the local office, his use of renewal receipts, his acceptance of premiums after the day on which they were payable, were all known to the home company, and it retained the premiums thus received. The insured died at the city of New Orleans on the 11th of November, 1872. Between the 1st of July and the 1st of November of that year he had resided at that city, which is south of the 33d degree of north latitude, without the knowledge or the previous consent in writing of the company; and the annual premium due at the latter date was not paid until ten days thereafter. A friend then paid it to the agent, and took from him a renewal receipt, but made no mention of the residence of the insured, who died the same day from yellow fever contracted in that district. The agent, on learning the fact, at once informed the company, and was immediately instructed by telegraph to tender the premium to the party paying, and demand the receipt. He did so; but the tender was not accepted, nor the receipt surrendered. *Held*, 1. That the company, by the agent's receipt of the premium, waived the forfeiture for non-payment at the stipulated time, but not the forfeiture incurred by the residence of

the insured within. the prohibited district.  2. That the company, having promptly tendered the return of the premium and demanded the surrender of its receipt, was not liable on its policy.

2.  A waiver can only be justly claimed by the assured where the course of dealing by the company has been such as to induce his action; and the company should be apprised of the facts which create the forfeiture, and of those which will necessarily influence its judgment in consenting to waive it.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

The Globe Mutual Life Insurance Company of New York, on the 5th of November, 1869, issued to Eliza Garber a policy of insurance for $5,000 upon the life of her husband, commencing on the 1st of that month.  The premium was payable annually on the 1st of November.  The policy stipulated for the payment of the amount of the insurance within sixty days after due notice and proof of the death of the insured, subject, however, to certain express conditions.  One of these conditions provided, that, if the premiums were not paid on or before the days mentioned for their payment, the company should not be liable for the sum insured, or any part of it, and that the policy should cease and determine.  Another condition provided, that, if the insured resided in any part of the United States south of the 33d degree of north latitude, except in California, between the 1st of July and the 1st of November, without the consent of the company previously given in writing, the policy should be null and void.  And the policy declared that agents of the company were not authorized to make, alter, or discharge contracts, or waive forfeitures.

The insured died at the city of New Orleans on the 11th of November, 1872.  Between the 1st of July and the 1st of November of that year he had resided at that city, which is south of the 33d degree of north latitude, without the previous consent in writing of the company; and the annual premium due on the first of that month was not paid on or before that day.  Due notice and proof of his death having been given to the company, and payment by it refused, suit was brought by Mrs. Garber in the Circuit Court of St. Louis County, whence it was removed, on the petition of the company, to the Circuit Court of the United States for the Eastern District of Missouri.  Judgment was rendered for the plaintiff, and the cause removed here by

writ of error. Mrs. Garber died, and Wolff, her executor, was made the defendant in error.

The other facts are stated in the opinion of the court.

*Mr. John W. Noble* for the plaintiff in error.
*Mr. Montgomery Blair,* contra.

MR. JUSTICE FIELD delivered the opinion of the court.

By the residence of the insured within the prohibited district of country during the period designated in the policy without the previous consent of the company, and the failure of the assured to pay the annual premium when it became due, the policy, by its express terms, was forfeited, and the company released from liability, unless the forfeiture was waived by the action of the company, or of its agents authorized to represent it in that respect.

The waiver of the forfeiture for the non-payment of the premium due on the 1st of November, 1872, is alleged on the ground that the premium was subsequently paid to an agent of the company, he delivering its receipt for the same, signed by its secretary, and countersigned by the manager and cashier of the local office, the plaintiff contending that the company, by its previous general course of dealing with its agents, and its practice with respect to the policy in suit, had authorized the premiums to be paid and the agent to receive the same after they became due, and thus had waived any right to a strict compliance with the terms of the policy as to the payment of premiums.

The waiver of the forfeiture arising from the residence within the prohibited district between the 1st of July and November, without the previous consent of the company, is also alleged from the subsequent payment of the premium and its receipt by the local agent, the plaintiff contending that the premium was received with knowledge by the agent of the previous residence of the insured within the prohibited district.

It appears from the record that the deceased was taken sick with the yellow fever at New Orleans, on the 6th or 7th of November, 1872, and died on the 11th of the month, between the hours of eleven and twelve in the forenoon. On the previous day a telegram was sent by Mrs. Garber from New Orleans to

a gentleman in St. Louis, directing the latter to go to the agency of the company in that city, at which the policy was issued, and pay the premium due on the first of the month. Accordingly, on the following morning, at about nine o'clock, the premium was paid by this gentleman, and a renewal receipt was thereupon delivered to him. This renewal receipt was dated in New York, and signed by the secretary of the company. It not only acknowledged the receipt of the premium, but it continued the policy in force for another year. The practice of the company was to send to its agents in St. Louis receipts in this form, signed by its secretary, to be countersigned by the local manager and cashier before being used. The receipt given was thus countersigned. The payment was made in the present case to a boy in the office of the agent, and by him the renewal receipt was delivered. It was his habit to receive premiums and deliver the proper renewal receipt in the absence of the agent. In this case the money was given by him on the latter's coming to the office the same morning. The agent credited the amount to the company in his semi-monthly account transmitted to the home office. The gentleman who paid the premium was not aware at the time that the insured was sick, and no inquiries were made by the boy or the agent as to his health. It is conceded that they had no information on the subject. A few days afterwards, the agent learned of the death of the insured, and of the sickness which was the immediate cause of it, and informed the home office. The company at once telegraphed the agent to return the premium and demand a surrender of the renewal receipt. The money was accordingly tendered to the gentleman who paid it, and a surrender of the renewal receipt demanded; but the tender was not received, nor the receipt returned.

The conditions mentioned in the policy could, of course, be waived by the company, either before or after they were broken; they were inserted for its benefit, and it depended upon its pleasure whether they should be enforced. The difficulty in this case, and in nearly all cases where a waiver is alleged in the absence of written proof of the fact, arises from a consideration of the effect to be given to the acts of agents of the company in their dealings with the assured. Of course,

such agents, if they bind the company, must have authority to waive a compliance with the conditions upon a breach of which the forfeiture is claimed, or to waive the forfeiture when incurred, or their acts waiving such compliance or forfeiture must be subsequently approved by the company. The law of agency is the same, whether it be applied to the act of an agent undertaking to continue a policy of insurance, or to any other act for which his principal is sought to be held responsible.

The principle that no one shall be permitted to deny that he intended the natural consequences of his acts when he has induced others to rely upon them, is as applicable to insurance companies as it is to individuals, and will serve to solve the difficulty mentioned. This principle is one of sound morals as well as of sound law, and its enforcement tends to uphold good faith and fair dealing. If, therefore, the conduct of the company in its dealings with the assured in this case, and with others similarly situated, has been such as to induce a belief that so much of the contract as provides for a forfeiture if the .premium be not paid on the day it is due, would not be enforced if payment were made within a reasonable period afterwards, the company ought not, in common justice, to be permitted to allege such forfeiture against one who has acted upon the belief, and subsequently made the payment. And if the acts creating such belief were done by the agent and were subsequently approved by the company, either expressly or by receiving and retaining the premiums, the same consequences should follow.

This principle applied to the case at bar will render the question presented one of easy solution. The company, notwithstanding the provision in the policy that its agents were not authorized to waive forfeitures, sent to them renewal receipts signed by its secretary, to be used when countersigned by its local manager and cashier, leaving their use subject entirely to the judgment of the local agent. The propriety of their use, in the absence of any fraud in the matter, could not afterwards be questioned by the company. Accompanying these receipts was a notice, printed on the same paper, that policies which became null for non-payment might be renewed at the home office, within a reasonable time, upon furnishing

satisfactory evidence of good health, such satisfactory evidence being left to the judgment of the local agent, and the renewal by the home office consisting of a receipt signed by its secretary, transmitted to such agent, to be used when countersigned by the local manager and cashier. It was the habit of the agent to give such renewal receipts whenever the premiums were paid after the time stipulated; and his accounts to the home office showed such subsequent payment. His action in this respect was not questioned by the company; and the premiums were retained by it without any pretence that the policies had ceased to be obligatory for want of punctuality in their payment. The mode of dealing by the agent with persons taking out policies at the local office, his use of renewal receipts, his acceptance of premiums after the day on which they were payable, were all known to the home company, and its retention of the premiums thus received was an approval of his acts. So far, then, as the waiver of the forfeiture incurred for non-payment of the premiums is concerned, it is clear that the company, by its course of dealing, had, notwithstanding the provision of the policy, left the matter to be determined by its local agent, to whom the renewal receipts were intrusted.

But, so far as the forfeiture arose from the residence of the insured within the prohibited district, the case is different. There is nothing in the acts of the company which goes to show that it ever authorized its agents to waive a forfeiture thus incurred, or that it ever knew of any residence of the insured within the prohibited district until informed of his death there. In every case where premiums were received after the day they were payable, the fact that a forfeiture had been incurred was made known to the company from the date of the payment, and the retention of the money constituted a waiver of the forfeiture; but no information of a forfeiture on any other ground was imparted by the date of such payment. The agent receiving the premium, in the case at bar, testified that he knew nothing of the residence of the insured within the prohibited district during the excepted period, and the evidence in conflict with his testimony was slight. He knew that the insured had a place of business there, and that he was permitted to make occasional visits there within that period, and

to reside there at other times.    Every thing produced as evidence of knowledge of residence within the prescribed district is consistent with these occasional visits and residence at other times than during the excepted period.    But, even if the agent knew the fact of residence within the excepted period, he could not waive the forfeiture thus incurred, without authority from the company.    The policy declared that he was not authorized to waive forfeitures; and to the provision effect must be given, except so far as the subsequent acts of the company permitted it to be disregarded.    There is no evidence that the company in any way, directly or indirectly, sanctioned a disregard of the provision with reference to any forfeitures, except such as occurred from non-payment of premiums.    As soon as it was informed of the residence of the insured within the prohibited district, it directed a return of the premium subsequently paid. It would be against reason to give to the receipt of the premium by the agent, under the circumstances stated, the efficacy claimed.    The court, in its instructions, treated the receipt of the premium by the agent, with knowledge of the previous residence of the insured within the prohibited district, if the agent had such knowledge, as itself a sufficient waiver of the forfeiture incurred, without any evidence of the action of the company when informed of such residence; and in this respect we think the court erred.    It is essential that the company should have had some knowledge of the forfeiture, before it can be held to have waived it.

It is true, that, where an agent is charged with the collection of premiums upon policies, it will be presumed that he informs the company of any circumstances coming to his knowledge affecting its liability; and, if subsequently the premiums are received by the company without objection, any forfeiture incurred will be presumed to be waived.    But here there was no ground for any inference of this kind from the subsequent action or silence of the company.    There was no evidence o: a disregard of the condition as to the residence of the insured in any previous year, and, consequently, there could be no inference of a waiver of its breach from a subsequent retention of the premium paid.    This is a case where immediate enforcement of the forfeiture incurred was directed when information

was received that the condition of the policy in that respect had been broken.

Not only should the company have been informed of the forfeiture before it could be held by its action to have waived it, but it should also have been informed of the condition of the health of the insured at the time the premium was tendered, upon the payment of which the waiver is claimed. The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions. To a just application of this doctrine it is essential that the company sought to be estopped from denying the waiver claimed should be apprised of all the facts: of those which create the forfeiture, and of those which will necessarily influence its judgment in consenting to waive it. The holder of the policy cannot be permitted to conceal from the company an important fact, like that of the insured being *in extremis*, and then to claim a waiver of the forfeiture created by the act which brought the insured to that condition. To permit such concealment, and yet to give to the action of the company the same effect as though no concealment were made, would tend to sanction a fraud on the part of the policy-holder, instead of protecting him against the commission of one by the company.

It follows that the judgment must be reversed, and the cause remanded for a new trial; and it is                    *So ordered.*