### RIFE et al. v. LUMBER UNDERWRITERS.

(Circuit Court of Appeals, Sixth Circuit. April 11, 1913.)

No. 2,232.

1. REMOVAL OF CAUSES (§ 119*)—CIRCUIT COURT OF APPEALS—DETERMINATION OF JURISDICTION.

Where a removed cause is taken to the Circuit Court of Appeals by writ of error, it is the court's duty on its own motion to determine whether the record exhibits a removable cause, regardless of whether any objection was taken to the jurisdiction of the federal court, either in the trial court or on appeal.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 252; Dec. Dig. § 119.*]

2. REMOVAL OF CAUSES (§ 111*)—FEDERAL JURISDICTION—DIVERSITY OF CITIZENSHIP—RECORD.

Where a cause is removed for diversity of citizenship, the record must affirmatively show jurisdiction, and the facts necessary to show diversity of citizenship not be left to argument or inference.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 237, 239; Dec. Dig. § 111.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** REMOVAL OF CAUSES (§ 86*)—RECORD—DIVERSITY OF CITIZENSHIP—PLEADING.

In an action against a Lloyds association, mere assertion in a petition to remove that defendant is a resident and citizen of New York and a nonresident of Tennessee, where the suit has been brought, is not necessarily more than a mere conclusion of the pleader, and alone is not sufficiently definite to show diversity of citizenship, relied on as a ground for removal.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 132, 166–179; Dec. Dig. § 86.*]

**4.** COURTS (§ 322*)—FEDERAL COURTS—JURISDICTION—DIVERSITY OF CITIZENSHIP—PLEADING—ASSOCIATIONS—"CITIZEN."

In an action against a Lloyds association, an allegation that defendant is an "association" is not alone sufficient to show citizenship, since an association, which is not a corporation, is not a "citizen," within the statutes regulating jurisdiction of the federal courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 876–881, 887; Dec. Dig. § 322.*

For other definitions, see Words and Phrases, vol. 2, pp. 1164–1174; vol. 8, pp. 7602, 7603.

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

**5.** REMOVAL OF CAUSES (§ 118*)—DIVERSITY OF CITIZENSHIP—RECORD—AMENDMENT.

Where the record in a state court of a removed cause against a Lloyds association was deficient, in that it failed to show the legal status of the defendant, but nevertheless contained allegations in the language of the statute of the existence of the elements entitling defendant to a removal, it was not so fatally lacking in jurisdictional allegations as to preclude amendment in the federal court by way of correct and definite showing of the actual status and citizenship of the defendant association and its members.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 250; Dec. Dig. § 118.*]

**6.** INSURANCE (§ 317*)—FIRE POLICY—"CONTINUOUS CLEAR SPACE."

A provision in a fire policy, covering lumber in piles, requiring a "continuous clear space" of 100 feet between the property insured and any woodworking or manufacturing establishments, was breached by the maintenance of an oilhouse, barn, and an elevated driveway in the 100-foot space between the lumber insured and plaintiff's mill.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 748; Dec. Dig. § 317.*]

**7.** INSURANCE (§ 664*)—EVIDENCE—CONDITIONS—CLEAR SPACE—WAIVER.

Where defendant's inspector made measurements and observations of plaintiffs' sawmill yard prior to the issuance of the policy sued on, and ascertained the then existing conditions, and defendant association (through its "home office" or general managing officers) had the report of the inspector, showing the existence of a barn, oilhouse, and elevated lumber platform within the 100-foot space required by the policy to be kept clear between the piles of lumber insured and plaintiffs' sawmill, proof that with such knowledge (and with reason to believe that the continued existence of such structures in their then location during the life of the successor policy was contemplated) defendant issued the policy and retained the premium would be competent to raise an estoppel against de-

---

fendant's right to insist on a breach of the clear space provision as a defense to an action on the policy, notwithstanding the provision in the policy that no agent or representative of the underwriters should have power to waive any provision or condition in the policy, except such as by its terms might be the subject of agreement, indorsed thereon or attached thereto, and as to such provisions they could not be waived, unless in writing indorsed on or attached to the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1687, 1688, 1699; Dec. Dig. § 664.*]

8. INSURANCE (§ 664*)—EVIDENCE—CONDITIONS—CLEAR SPACE—WAIVER.
Evidence of an alleged waiver of a clear space provision in a fire policy by defendant's local agent was inadmissible, in the absence of an offer to show ratification of the agent's act by the company; the same not having been in writing and attached to the policy as required by its terms.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1687, 1688, 1699; Dec. Dig. § 664.*]

In Error to the Circuit Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by O. C. Rife and another against the Lumber Underwriters. Judgment for defendant, and plaintiffs bring error. Reversed.

C. L. Marsilliot and Caruthers Ewing, both of Memphis, Tenn., for plaintiffs in error.

Trezevant, Bartels & Trezevant, of Memphis, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiffs in error sued upon two policies of insurance issued by defendant in error, for the recovery of fire loss upon a stock of lumber and other property in plaintiffs' millyard. Plaintiffs submitted to nonsuit as to one policy. As to the other, verdict was directed for defendant.

[1] 1. The suit was begun in a state court of Tennessee. It was removed to the federal court for alleged diversity of citizenship of the parties. No motion to remand was made. On the hearing here, the question whether the suit was lawfully removed was raised by a member of this court. That it is the duty of this court to determine whether the record exhibits a case properly removable, regardless of whether any objection was taken to the jurisdiction of the federal court, either in the court below or on appeal, is established by a long line of decisions, among which are Great Southern, etc., Hotel Co. v. Jones, 177 U. S. 449, 453, 20 Sup. Ct. 690, 44 L. Ed. 842; Fred Macey Co. v. Macey (C. C. A. 6th Cir.) 135 Fed. 725, 726, 68 C. C. A. 363; Chicago, etc., Ry. Co. v. Willard, 220 U. S. 413, 419, 31 Sup. Ct. 460, 55 L. Ed. 521. The question of jurisdiction arises in this way:

In the title to the bill of complaint the defendant was described as "an insurance corporation or association doing business in Tennessee."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The petition for removal asserted that the defendant then, and at the time suit was begun, was a resident and citizen of the state and city of New York, and a nonresident of the state of Tennessee, and that the plaintiffs were residents and citizens of Tennessee and Mississippi, respectively. Service of subpœna had been made upon an agent representing the defendant in Tennessee. After the removal, defendant appeared specially, denying the authority of the alleged agent to accept or acknowledge such service, and challenging the jurisdiction of the court over its person; alleging that defendant was not a corporation or a joint-stock company, but a voluntary association composed of 15 individuals named, each of whom (correcting what is conceded to be an error in the printed record as to the stated residence of one member) was alleged to be a citizen and resident of a specified state other than Tennessee, and (according to the undisputed statement in brief of defendant's counsel) was, in effect, alleged to be a citizen of a state other than Mississippi. Alias summons was served upon the commissioner of insurance, as provided by the Tennessee statutes, under which (Shannon's Code, § 3298) associations formed, as is defendant, upon the plan of "Lloyds," are authorized to transact in that state insurance other than life upon the same terms and conditions as required of "insurance companies of the United States or one of the United States"; the defendant association having duly authorized the commissioner to acknowledge service of all legal process. Supplemental process also issued against the attorney in fact of the association. The plea to the merits alleged that the association was not a "legal entity," and was neither a corporation nor a joint-stock company.

[2-4] It is well settled that the record must affirmatively show jurisdiction to make the removal, and that the facts necessary to show diversity of citizenship may not be left to argument or inference. Laden v. Meck (C. C. A. 6th Cir.) 130 Fed. 877, 65 C. C. A. 361; Thomas v. Board of Trustees, 195 U. S. 207, 210, 25 Sup. Ct. 24, 49 L. Ed. 160. Diversity of citizenship does not appear with sufficient definiteness of detail upon the record in the state court. The bill of complaint does not unequivocally allege that defendant was a foreign corporation, or even a corporation; nor does the petition to remove allege the defendant to be a corporation, much less that it is organized under the laws of a state other than Tennessee or Mississippi. The mere assertion that it is a "resident and citizen of the state of New York * * * and a nonresident of the state of Tennessee" is not necessarily more than a mere conclusion of the pleader, and standing by itself is not sufficiently definite. Lafayette Ins. Co. v. French, 18 How. 405, 15 L. Ed. 451; Great Southern, etc., Hotel Co. v. Jones, supra, 177 U. S. 454, 20 Sup. Ct. 690, 44 L. Ed. 842; Fred Macey Co. v. Macey, supra, 135 Fed. 725, 68 C. C. A. 363. And an allegation that defendant is an "association" is not alone sufficient to show citizenship; for an association which is not a corporation is not a citizen within the meaning of the statutes regulating jurisdiction. Chapman v. Barney, 129 U. S. 677, 682, 9 Sup. Ct. 426, 32 L. Ed. 800; Gt. Southern, etc., Hotel Co. v. Jones, supra, 177 U. S. 449, 456, 457,

20 Sup. Ct. 690, 44 L. Ed. 842; Thomas v. Board of Trustees, supra, 195 U. S. 216, 25 Sup. Ct. 24, 49 L. Ed. 160; Fred Macey Co. v. Macey, supra, 135 Fed. 726, 727, 68 C. C. A. 363.

[5]. The petition for removal, in addition to what has already been stated, contained an assertion of the requisite jurisdictional amount in dispute, and an allegation that "the controversy in said suit is between citizens of different states." The record in the state court as to diversity of citizenship thus showed in general terms: (a) The existence of a controversy between citizens of different states; (b) defendant's residence in and citizenship of New York; and specifically (c) plaintiffs' residence in and citizenship of Tennessee and Mississippi, respectively. It is true the petition misstated defendant's citizenship and residence, but such misstatement, not being challenged, did not affect the jurisdiction to remove. While, therefore, the record in the state court was deficient, in that it failed to show the legal status of the defendant (whether a corporation or an association), it contained assertions in the language of the statute of the existence of the elements entitling defendant to a removal. We therefore think the record in the state court was not so fatally lacking in showing a jurisdiction to remove as to preclude amendment in the federal court, by way of correct and definite showing of the actual status and citizenship of the defendant association and the members composing it.

We think this conclusion sustained by the decision in Kinney v. Columbia Savings & Loan Ass'n, 191 U. S. 78, 24 Sup. Ct. 30, 48 L. Ed. 103, which materially relaxed the strictness formerly applied to the question of jurisdictional showing in removal proceedings. It is true that in the Kinney Case the application in the federal court, to amend the petition for removal, was made before any proceeding on the merits; but we are unable to see that that feature is important where, as here, the record in the federal court, before any proceeding had therein on the merits, showed (as asserted) diversity of citizenship and thus actual jurisdiction to remove. We think the case distinguishable from Thomas v. Board of Trustees, supra, and Fred Macey Co. v. Macey, supra, in that the court could see, as matter of law, from the face of the record, that the board of trustees (in the Thomas Case) and the partnership association (in the Macey Case) were not and could not be citizens within the meaning of the statutes relating to removal, while in this case defendant might be an "association," and yet be a corporation. We see no merit in the suggestion that the individual members of the defendant association have not asked removal. If the association could be sued as such, we think it could lawfully take the necessary steps in its defense, including removal.

[6] 2. The policy contained a warranty by the assured that "a continuous clear space of 100 feet shall at all times be maintained between the property hereby insured and any woodworking or manufacturing establishment." The undisputed proofs show that at the time of the fire the distance between the mill and the lumber yards was more than 100 feet, and that in one direction there was a continuous clear space of more than 100 feet between the mill and the lumber. In other directions, however, and thus between the mill and certain of the lum-

ber piles, there intervened an oilhouse, a barn, and an elevated drive-way. The existence of these three structures was clearly a violation of the "continuous clear space" provision. They naturally increased the risk, and the effect of this violation is not taken away by the fact that the fire was actually communicated from the mill to lumber piles more than 100 feet therefrom, without the agency of these intervening structures. It was because of the violation of the clear space provision that verdict was directed for defendant. In the absence of evidence of waiver, this direction was correct.

[7] Plaintiffs contended that defendant had waived this clear space provision, and in proof of their contention offered to show, in substance, that shortly before the issuance of the present policy, and while its predecessor policy was in force, defendant's inspector made measurements and observations of the millyard, and ascertained the then existing conditions, that the company had the report of the inspector showing the conditions, and that the conditions so shown were substantially and practically the same as at the time of the fire, and that no objection was made by the company on account of the existence of the conditions referred to. The argument in substance is that, by accepting the premium and issuing the policy, the company is estopped to declare the policy void by reason of a condition which it knew existed when the policy issued, and which it had reason to believe was expected to continue during the policy period.

We think the offer broad enough to embrace proof that the "home office" or the general managing officers of the company (as distinguished from a mere agent) actually received the inspector's report. Plaintiffs offered to show "that the insurance association itself received the report of this inspector." The policy contains the express provision that:

"No agent or other representative of the underwriters shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or attached hereto, and as to such provisions and conditions no agent, or representative, shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The alleged waiver is not written upon or attached to the policy, and defendant invokes the above provision as absolutely precluding the assertion of the alleged waiver. In Assurance Co. v. Building Ass'n, 183 U. S. 308, at page 361, 22 Sup. Ct. 133, at page 153 (46 L. Ed. 213), an exhaustive examination and discussion is had of the authorities relating to waiver of conditions in insurance policies, and to the prohibition against altering or contradicting unambiguous written contracts by parol evidence. That case involved a provision as to waiver in the identical language found in the policy before us. Justice Shiras, in the enumeration of the principles sustained by the authorities, included the propositions:

"That insurance companies may waive forfeiture caused by nonobservance of such conditions; that where waiver is relied on, the plaintiff must show

that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that where the waiver relied on is an act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent."

That the defendant here might effectually waive the "clear space" provision in question is established by Assurance Co. v. Building Association. The objection that the policy makes the waiver ineffective, unless written upon or attached to the policy, is disposed of by the decision of this court in Ætna Life Ins. Co. v. Frierson, 114 Fed. 56, 51 C. C. A. 424, where it was held in an opinion by Judge (now Mr. Justice) Lurton that such provision may be itself waived as well as any other, and that the question in every such case is whether the waiver has been made by the corporation or by one authorized to act for it in the matter. Forfeitures are not favored, and any course of action on the part of an insurer which leads the insured necessarily to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon forfeiture, although it might be claimed under the express letter of the contract. This principle has been applied in the following cases, among others: Insurance Co. v. Wolff, 95 U. S. 326, 330, 24 L. Ed. 387; Insurance Co. v. Eggleston, 96 U. S. 572, 577, 24 L. Ed. 841; Queen Ins. Co. v. Union Bank & Trust Co. (C. C. A. 6th Cir.) 111 Fed. 697, 49 C. C. A. 555; Etna Life Ins. Co. v. Frierson, supra, 114 Fed. 63, 51 C. C. A. 424; Supreme Lodge v. Wellenvoss (C. C. A. 6th Cir.) 119 Fed. 671, 675, 56 C. C. A. 287.

We do not think that defendant's knowledge, at the time the policy issued, that lumber was piled within 100 feet of the mill, would necessarily estop defendant from urging such breach of the "clear space" warranty as avoiding the policy. Shingle Co. v. Insurance Co., 91 Mich. 441, 51 N. W. 1111. The specific location of lumber piles is or may be more or less temporary in nature, and, as affecting such structures, a warranty might well be considered promissory in nature. On the other hand, the barn, the oilhouse and the lumber platform were more or less permanent in nature; and if defendant, with knowledge of their existence and with reason to believe that their continued existence in their then location with respect to the mill and lumber piles was contemplated, elected to receive the premium and issue the policy, it would, we think, be estopped from asserting the continued existence of those structures as a breach of the "clear space" warranty. Whether defendant had such knowledge and reasonable expectation would be a question of fact for the jury; and so of the question whether the knowledge of the location of the structures named, obtained by defendant during the existence of its predecessor policy, could reasonably be presumed to be, or should have been, present in its mind at the time the policy in suit was issued.

We pass by without decision the question whether the alleged waiver was asserted in the declaration, as well as the question whether such assertion was necessary; for we find nothing in the declaration in—

consistent with the claim of such waiver in case plaintiffs' contention there stated, that a "clear space" of 100 feet actually existed, should not be sustained, and the objection to the offered testimony did not clearly raise a question of pleading, and thus of the necessity of, or right to, amendment. Plaintiff should be allowed before another trial to make any proper amendment in this regard.

[8] 3. Upon the authority of Assurance Co. v. Building Association, we think the court rightly rejected the offer to show that defendant's local agent waived the "clear space" provision of the policy. Such alleged waiver was not written upon or attached to the policy, and there was no offer to show a ratification of his act by the company itself, unless and except as involved in the company's own alleged waiver already discussed. The case is not, we think, affected by the provision of the Tennessee statutes (chapter 441, Acts of 1907):

"That every policy of insurance issued to and for the benefit of any citizen or resident" of the state "shall be held as made in this state and construed solely according to the laws of this state."

This statute undoubtedly has the effect of making the policy a Tennessee contract, and requiring its validity and interpretation to be determined by the law of that state. Russell v. Grigsby (C. C. A. 6th Cir.) 168 Fed. 577, 94 C. C. A. 61. No law of Tennessee requiring a construction of the waiver provision differently than we have construed it has been called to our attention. Such is not the effect of decisions that a policy provision that no agent has authority to waive any condition, and that no waiver could be recognized, unless in writing, may itself be waived.

For the error pointed out, the judgment of the Circuit Court is reversed and a new trial ordered. The defendant may apply to the District Court for an amendment of its removal proceedings to conform to the facts. Failing such prompt application, the case should be remanded to the state court.