HELEN H. HANTHORNE ET AL., Respondents, *v.* BROOKLYN LIFE INSURANCE COMPANY, Appellant.

5 73
148m 610

### January 2, 1878.

1. In a proceeding in equity to enforce specific performance, and to secure the execution and delivery of a paid-up policy, to entitle plaintiff to the relief sought he must show that he has, on his part, performed the conditions precedent to his right to demand a paid-up policy.

2. Where the time when the notice of demand for a paid-up policy is required to be given depends upon the time of payment, a waiver of punctuality in payment is no waiver of punctuality in giving notice, the time of giving notice being a distinct condition.

3. The law does not favor forfeitures; and when forfeiture is claimed, slight circumstances are enough to show a waiver of such forfeiture; but where the claim of waiver is made in an action to compel the execution of a contract, the evidence must be direct, and a chancellor cannot infer a waiver from remote or slight circumstances.

APPEAL from St. Louis Circuit Court.

*Reversed and dismissed.*

JAMES O. BROADHEAD, for appellant.

EDWARD WHITE, for respondents : Waiver. — *Thompson* v. *Insurance Co.*, 52 Mo. 469 ; *Walsh* v. *Insurance Co.*, 30 Iowa, 133 ; *Buckbee* v. *Insurance Co.*, 18 Barb. 581 ; *Frolich* v. *Insurance Co.*, 47 Mo. 406 ; *Ruse* v. *Insurance*

*Co.*, 26 Barb. 566; *Helm* v. *Insurance Co.*, 61 Pa. 107; *Home Life Ins. Co.* v. *Pierce*, 75 Ill. 426. Principal and agent. — *Wing* v. *Hawey*, 5 De M. G. & G. 216; 2 Big. Life Ins. Cas. 165; *Hodsden* v. *Insurance Co.*, 97 Mass. 144; *Dean* v. *Insurance Co.*, 4 N. Y. Sup. Ct. 497.

HAYDEN, J., delivered the opinion of the court.

This is a suit in equity to enforce specific performance of a contract of life insurance. M. P. Hanthorne, one of the present plaintiffs, held a policy on his life, in the defendant, on which policy he had paid several premiums. On this policy a semi-annual premium became due on December 28, 1871, and this premium not being paid at that date, several interviews took place between Hanthorne and the defendant's agents; and it is upon what took place at these interviews that the present controversy chiefly turns. By this policy it was provided as follows: "After two annual payments, should the party wish to discontinue (notice to the company being given before the net premium becomes due), the company will issue a paid-up policy for as many tenths of the amount originally assured as there have been annual premiums paid in cash." Under this clause, the plaintiffs contend that, more than the requisite number of premiums having been paid, they gave notice to the company and became entitled to a paid-up policy. This notice, they claim, was given orally to the defendant's agent by Hanthorne, at one of the interviews above referred to, but the plaintiffs admit that it was not given until sometime in January, 1872, and, consequently, not until after December 28, 1871, when the premium became due. The defendant, on its part, contends that, as this premium became due and remained unpaid, and as no notice was given of plaintiffs' election to take a paid-up policy until January of the succeeding year, the plaintiffs failed to comply with the condition in the clause quoted, and are not entitled to a paid-up policy. In reply to this, the plaintiffs claim that by a previous course of

dealing, shown especially in the failure of the defendant to exact many prior premiums on the days they respectively became due, and by receiving them after they were due, the defendant waived the forfeiture of the policy.

As the present is a bill in equity to enforce specific performance, and to secure the execution and delivery of a paidup policy under the provision recited above, the question is not as to the forfeiture of the policy. The question is, Are the plaintiffs entitled to the relief they seek? And this depends upon whether the plaintiffs have performed the conditions which, by the terms of their agreement, they were bound to perform before they could demand a paid-up policy. The rule that equity will not award specific performance unless it clearly appears that the terms of the agreement have been complied with, has its foundation in the best of reasons. Equity cannot make contracts, but can only compel their execution when made. By an express term of the policy, the defendant had a right to notice before the then next premium became due, and upon this condition precedent depended the plaintiffs' right to a paid-up policy. This notice, before the maturity of the premium obligation, was not given, as the plaintiffs admit; how, then, can they obtain from a court of equity affirmative relief? Here was an obligation on its face requiring action on plaintiffs' part. Without this action, presumptively, the minds of the parties could not have met; and, if the minds of the parties did not meet, — if, through a failure on the plaintiffs' part, one term upon which, by the previous agreement, the defendant had insisted, was not complied with, — it is evident that to enforce performance would be to enforce a contract which the parties have not agreed upon. Thus the defendant may well complain — as it never got the prescribed notice, and the court must so find — that the court is making for it a contract which the defendant never made for itself.

The bill proceeds upon the theory of a complete perform-

ance on plaintiffs' part, and avers that after Hanthorne had paid the semi-annual premium due on June 28, 1871, and before the next premium became due, the plaintiffs gave notice of their wish to discontinue, and demanded a paid-up policy, etc., and then avers refusal to deliver on defendant's part. But the evidence does not correspond to the allegations, or meet the issue thus raised. In the first place, it is not established with sufficient clearness, to enable a court of equity to decree specific performance, that notice was given and a paid-up policy demanded even shortly after the maturity of the premium obligation. Taylor, with whom Hanthorne says he had the conversations, denies that there was any such demand; and while Hanthorne, on cross-examination, says distinctly that he did make 'such a demand, yet the inference from his direct testimony is, that while there was conversation between him and Taylor about a paid-up policy, and while Hanthorne expressed his preference for one, the matter was left open between him and Taylor as to what was to be done. This, so far, confirms Taylor's testimony, who says that Hanthorne afterwards repeatedly promised to pay his premiums. Other circumstances, which it would require too much space to discuss, tend to confirm the view that there was no demand made at this time. The plaintiffs' evidence is not satisfactory upon this point, the burden being on them to distinctly show that they gave notice of their election not to pay further premiums, but to take a paid-up policy.

But, waiving this, and proceeding upon the ground that they did give notice as claimed by them, the evidence is clearly insufficient to entitle the plaintiffs to specific performance. Let it be assumed that upon all previous occasions when semi-annual premiums were due, the defendant permitted the pay-day to go by, and that there was what is called a course of dealing in this respect established. The inference cannot be drawn that because the defendant was willing to waive one condition it was willing to waive all. The

waiver shown goes to the mere time of payment; and a company may be willing to disregard a few days in the receipt of its premiums, and be unwilling to disregard conditions to its issuing paid-up policies. It is no more legitimate to draw the inference of waiver of the prescribed notice in this case, than it would be legitimate to draw from the same premises, in case of a fire-policy, an inference of waiver of notice of proofs of loss. It is argued, indeed, that the time when the notice is to be given depends on the time for the payment of the premium. This is true; but the giving of notice is a distinct condition, and one obligatory upon the plaintiffs. The defendant could not anticipate that the plaintiffs were about to demand a paid-up policy; and knowing that, by the agreement, the plaintiffs were bound to give the prescribed notice, it had a right to presume they would do so. It is the plaintiffs who are seeking relief, and it was for them to perform the conditions if they wished the policy. It would be contrary to equity to entail upon the acts of the defendant, done only with a view to given consequences, other consequences which it was not bound to anticipate or connect with such acts. *Globe Mutual Ins. Co.* v. *Wolff*, 95 U. S. 326. The evidence as to the course of dealing has no legal bearing upon this case, and, properly, was not competent evidence.

Apart from the fact that the evidence offered here as to waiver did not tend to prove waiver of the act here required to be done, it is evident that there is a difference in application between the class of cases where waiver is relied on as an excuse for non-performance, with a view to averting a forfeiture of an executed contract, and cases like the present. The ground upon which the law proceeds in the first class of cases is explained in *Thompson* v. *Insurance Company*, 52 Mo. 469, and *Hanley* v. *Life Association of America*, 4 Mo. App. 253. The law does not favor forfeitures, and slight circumstances are allowed to go to the jury to show that the defendant waived per-

formance of the act the non-performance of which he insists on at the trial as a cause of forfeiture. But where it is claimed that there was a waiver, and the claim is made with a view of compelling a defendant to execute a contract, it is clear that the evidence must be direct, and that a chancellor would not be authorized to infer a waiver from remote or slight circumstances; otherwise, he would run the risk of compelling the defendant to execute a contract to the terms of which his mind had never assented.

The court below decreed performance in this case; but, for the reasons given, this was error, and, with the concurrence of all the judges, the decree is reversed and the bill dismissed.