WILLIAM N. HOYT, Respondent, *v.* HARBOR AND SUBURBAN BUILDING AND SAVINGS ASSOCIATION, Appellant.

Building and savings association — withdrawal of stock — when subscriber not entitled to withdraw stock and recover withdrawal value thereof.

The articles of association and by-laws of a building and savings association, subject to which its certificate of stock was issued and accepted, provided that the subscriber should pay a certain sum upon each share at the principal office of the association on or before a specified day of each month; that if the monthly payments should become past due for four months the certificate would be canceled and the amount previously paid thereon forfeited to the association; that the stock, if not pledged to the association for a loan, might be withdrawn after one year upon thirty days' written notice to the secretary at the principal office, with designated amounts of profits apportioned in proportion to the age of the certificate, provided the stock should then be in good standing and all dues, claims and fines thereon paid. The subscriber paid the amount of dues payable on his stock equal in all to the amount of the payments due for one year. After he had ceased making pay-

8

ments he delivered at the office of the association an application for withdrawal, signed by him, and offered to give up his stock certificate and the pass book upon which his payments were entered if the person to whom the application was delivered would give him a receipt for the same. This was refused, and the subscriber declined to leave the certificate and pass book. Thereafter this action was brought to recover the withdrawal value of the stock. *Held*, that there is no evidence of an acceptance of the application .of withdrawal or of any affirmative act of the defendant; that the burden was on the plaintiff to show that he had complied with the conditions on which withdrawal is allowed, and, as he had not complied with the requirements of the association in making payments upon his stock at the time required by the by-laws, since at the time of his application for withdrawal there were payments due and unpaid, that he was not entitled to withdrawal. The facts proven do not create either a forfeiture, waiver or estoppel on the part of the association.

*Hoyt* v. *Harbor & Suburban Building & Savings Assn.*, 121 App. Div. 900, reversed.

(Submitted November 23, 1909; decided December 17, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 31, 1907, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alexander S. Bacon* for appellant.

*Sydney A. Syme* for respondent. Plaintiff was not in arrears at the time of making the demand for withdrawal and for the return of the money paid in. (Richards on Ins. [2d ed.] 81 ; *Butler* v. *A. L. Ins. Co.*, 10 J. & S. 342 ; *Bradley* v. *J. H. L. Ins. Co.*, 20 App. Div. 22 ; *Munn* v. *M. L. Ins. Co.*, 115 App. Div. 855 ; *Ins. Co.* v. *Eggleston*, 96 U. S. 572 ; *Ins. Co.* v. *Wolff*, 95 U. S. 326 ; *Dean* v. *Ætna L. Ins. Co.*, 2 Hun, 358.)

CHASE, J. The plaintiff joined the defendant association and became a subscriber for twenty shares of its monthly

payment stock on November 8, 1900.  The stock was issued as of November 1, 1900, and the certificate states that it is issued and accepted subject to the articles of association, by-laws and terms and conditions expressed on the back thereof.  Among the terms and conditions expressed on the back thereof are the following:

"*First.*  The member agrees to pay or cause to be paid without notice a monthly payment of 50c. per share for each share named herein.

"*Second.*  The monthly payments on these shares are required to be made at the principal office, whether in person or through a local branch, on or before the third business day of each month.  Failing to make such payment, a fine at the rate of Five Cents per share for such failure will be charged and must be paid before other payments will be credited. The Association is only responsible for moneys received at Principal Office.

"*Third.*  This certificate is guaranteed to reach maturity or par value in 128 months from date of issue, provided the dues hereon are promptly paid.

"*Fourth.*  If a monthly payment hereon becomes past due for 4 months this certificate will be cancelled and amount paid forfeited to the Association as profits.

"*Fifth.*  This certificate is withdrawable, subject to Article 41 on 30 days' written notice to the Secretary at the principal office after one year, with one-third of apportioned profits if during second year; one-half profits third and fourth years; two-thirds profits fifth and sixth years; three-quarters profits thereafter and before maturity.

"*Sixth.*  A withdrawal fee of 50c per share will be deducted when shares are withdrawn."

Article 41, referred to in the fifth paragraph of the terms and conditions on the back of the certificate, so far as material, is as follows: "Only shares which are not pledged as security upon an advance can be withdrawn before maturity, and then only provided the same are in good standing and all dues, claims and fines thereon have been paid.  All withdrawals

shall be subject to such terms and conditions relative thereto as shall be expressed in the certificate of shares, provided, however, that all certificates for withdrawals must be filed with the secretary of the association at the principal office properly receipted and thirty days' notice of intention to withdraw may be required to be given therewith. Upon filing of the notice of withdrawal the payment of dues, if any, shall cease and the withdrawal value thereof shall be calculated as of the date of filing of the notice but no interest upon withdrawal value of the shares shall be paid. Payment shall be made in the order of the application for withdrawal but the association shall not be required to pay out on withdrawing or matured stock more than one-half of the amount received from dues and stock payments in any month." Installment stock matures and is payable when the dues paid thereon with the profits apportioned thereto and credits thereon shall equal one hundred dollars per share.

The plaintiff received a copy of the by-laws when he joined the association and was given a pass book on which to enter the payments as they were made by him. The payments made by him to the association were entered upon the pass book. It appears that the plaintiff made a payment to the defendant of $10 each month from November, 1900, to June, 1901, inclusive, although such payments were generally made after due day. He paid $20 on September 16, 1901, and $20 February 10, 1902, making an aggregate payment of $120. It is not claimed by the plaintiff that he ever made any other or further payments to the defendant. At some time after the plaintiff made the February, 1902, payment, and he testifies that he thinks it was in March, 1902, and four or five months after he had ceased making payments to the defendant, he called at the office of the defendant and delivered to a person at such office an application for withdrawal signed by him. He further testifies that he offered to give such person his stock certificate and pass book if such person would give him a receipt for them, but that the person would not give him a receipt and he declined to leave them. This

action was commenced March 24, 1903, and upon evidence, the material part of which is here stated, judgment was directed in favor of the plaintiff for $146.40. The complaint alleged that " plaintiff informed the defendant herein of his desire to withdraw said certificate of shares." Written application was necessary. No written application was pleaded. On the trial secondary evidence of an alleged written application for withdrawal was given without a previous notice to produce subject to objection and exception. It is claimed that such ruling was erroneous, but for the purpose of this opinion we will assume that the application for withdrawal was sufficiently pleaded and that there was no error in the admission of evidence of the contents of the alleged written application. There is no evidence of an acceptance of the application or of any affirmative act on the part of the defendant. Withdrawal is a privilege dependent upon compliance with the conditions upon which withdrawal is allowed. The burden was on the plaintiff to show himself entitled to withdrawal. One condition is that the stock is " in good standing, and all dues, claims and fines thereon have been paid." It is not disputed that in March, 1902, when the plaintiff claims the application for withdrawal was made, at least sixteen months had elapsed since the stock was issued and only an amount equal to twelve monthly payments had been paid. If the application for withdrawal was made after the third business day of March then such application was made after the seventeenth payment was due. It is suggested that it is not shown that the collector called for these payments. That fact might be considered by the association as a reason why fines should be remitted, but it is not a reason why the dues should not be paid. The dues are not credited until paid at the home office, and withdrawal is dependent upon the subscriber having paid all dues for which he is liable. In this case four or five payments due when the alleged application for withdrawal was made were not paid. Plaintiff, therefore, was not entitled to withdrawal.

The respondent urges that a forfeiture can be waived, and h

claims a waiver in this case by reason of the defendant's accept-
ing the payment in February, 1902, and he cites in support
of his contention a large number of cases, among which are
*Butler* v. *American Popular Life Ins. Co.* (42 N. Y. Super.
Ct. 342); *Bradley* v. *John Hancock Mut. L. I. Co.* (20 App.
Div. 22); *Munn* v. *Masonic Life Assn.* (115 App. Div.
855); *Insurance Company* v. *Eggleston* (96 U. S. 572);
*Insurance Company* v. *Wolff* (95 U. S. 326). These cases
are not applicable to the present case because the defendant
does not claim a forfeiture. One of the defendant's by-laws
provides that in case monthly payments are in arrears for
four months the certificate can be canceled. Such a cancella-
tion requires affirmative action on the part of the defendant.
If the defendant had after February, 1902, attempted to can-
cel the plaintiff's certificate of stock for failure to pay four
monthly payments of dues it might be claimed that after the
receipt of dues in February the defendant had waived the
right to forfeit and cancel the stock by reason of defaults
occurring before that day. In that case the authorities would
be in point. The defaults existed at the time the claimed
application for withdrawal was made. The defaults also cre-
ated the fines without any act on the part of the defendant.
There is nothing in what occurred at the defendant's office
when the plaintiff claims to have made his application for
withdrawal which in any way creates a forfeiture, estoppel or
waiver on the part of the defendant. In any event a waiver
of forfeiture or of fines if claimed, does not waive payment of
monthly dues omitted or put a delinquent on a par with prompt
payers where the favor of a loan or withdrawal is asked. If
a stockholder desires to withdraw from the association he must
show that he has complied with the by-laws and that he is not
in arrears for dues or fines. Plaintiff's stock was never can-
celed and he could at any time have paid all dues and fines
that he owed so as to make his stock in " good standing " and
then he could have given written notice of withdrawal as pro-
vided by the by-laws. Upon so doing he would have been
entitled to payment " in the order of the application for with-

drawal," but even then the association was not required to pay out on withdrawing and matured stock more than one-half of the amount received from dues and stock payments in any month.

The burden was on the plaintiff in this case to establish his right to withdrawal and a refusal by the defendant to accord him the privilege of withdrawal after he had shown compliance with every prerequisite. The judgment should be reversed and a new trial granted, with costs to abide the event.

Edward T. Bartlett, J. (dissenting). This case was tried before Mr. Justice Gaynor and a jury in Westchester county.

The defendant is a building and savings association, dealing apparently in insignificant amounts and whose patrons are taken mainly from the poorer classes.

The plaintiff in November, 1900, took out a certificate, so called, in this association and subscribed for twenty shares of what is known as monthly payment stock of the par value of $100. The plaintiff agreed to pay the defendant association the sum of fifty cents per share on account of the monthly payments, which aggregated the sum of ten dollars per month, until such certificate should reach the so-called maturity or par value. The plaintiff paid these monthly installments until he had paid $120.

The plaintiff sought to avail himself of this privilege under the following circumstances: It seems that the monthly payments on the shares were required to be made at the principal office or through a local branch. The plaintiff resided at Mt. Vernon, Westchester county, and when payments were due under the certificate he was regularly called upon by an accredited agent of the defendant in Mt. Vernon; and it is assumed that this answered the provision of payment through a local branch, as the company had, in the case of twelve payments, recognized the regularity of this collection.

After the plaintiff had made twelve payments on this certificate, he claimed to be within the provision that his certificate was withdrawable. Thereupon the plaintiff called at the

principal office of the defendant on Fourteenth street, in the city of New York, where he saw the secretary of the defendant and told him that he wished to take the necessary steps to withdraw his certificate. Thereupon he was handed a paper which proved to be a regular withdrawal blank duly filled out and he signed and returned it to the secretary. The latter then demanded the return of the certificate and the pass book showing payments and their date. The plaintiff refused to deliver these unless he was given a receipt therefor, and as that was declined the interview terminated, he leaving the certificate of withdrawal with the association.

The question of law, according to Judge Gaynor, was whether the conceded facts, growing out of the payment of the twelve installments and the interview with the secretary, constituted a waiver of further formalities, and entitled the plaintiff to withdraw his certificate and surrender it and the pass book on receiving some written evidence from the company of the transaction occurring at the main office of the association as hereinbefore stated.

This case turns on the question whether the plaintiff made twelve monthly consecutive payments on his contract of insurance, and was entitled to withdraw his certificate and be accorded such benefits as had then accrued. The claim of the plaintiff is that he made twelve monthly consecutive payments in law which were duly recognized as regular on his pass book issued by the association in due course. The learned trial judge has ruled that two irregularities in making these payments were waived by the company owing to the action of its duly accredited agent or collector. The claim that this plaintiff was four months in arrears of his monthly payments at the time he sought to surrender his certificate in March, 1902, at the general office of the company, is not sustained when the record in this case is carefully scrutinized. When the various dates are examined it becomes perfectly clear that the claim that the plaintiff was four months in arrears when he sought to surrender his certificate, is not borne out by the record facts, entirely aside from the testi-

mony of the plaintiff, who at one point in his testimony became somewhat confused as to dates. The pass book or card must govern. The certificate of the plaintiff is printed in the record and dated November 1st, 1900. The monthly payments required under this contract of insurance were entered by the agent of the company and receipted for by him on what was called a pass book or card which is in evidence. It appears that from November, 1900, to June, 1901, both dates inclusive, the plaintiff paid ten dollars dues a month. In September, 1901, he made a payment of twenty dollars which covered July and August, 1901. These are the payments where the defendant first waived strict compliance with the requirements of the association and disposes of two of the four months alleged to be in default. In January, 1902, the plaintiff paid ten dollars which covered September, 1901, and in February, 1902, he paid ten dollars which covered October, 1901. These last two payments are a waiver on the part of the company and dispose of the remaining two months alleged to be in default. The regular payments and the payment made after they were due and delay waived amounted to $120, which entitled him to surrender his certificate.

The contention of the association is that the plaintiff could not surrender his certificate upon the basis of these payments of $120, for the reason that two of them, July and August, 1901, were not paid until September, 1901; also that the payments for September and October, 1901, were not made until January and February, 1902.

The very obvious answer to this is that these four alleged belated collections were made and receipted for by the agent of the company and amounted to a waiver of earlier payment. It is true that the plaintiff did not make his application to surrender his certificate until early in March, 1902, a few days after the last collection was made in February, 1902. This was for the reason that he was in no situation to surrender his certificate until after the February payment. The plaintiff was led to believe that the company were satisfied

with the somewhat irregular manner in which their agent collected of him the four monthly payments, as the pass book or card discloses.

It seems very clear that the four belated collections amount to a waiver on the part of the company by an apparent lack of promptness in collecting the same. The plaintiff had followed the usual course of procedure after he took out his certificate. He was bound by its terms to make his payments at the general office of the company or at some local agency. The general office of the company was in the city of New York and the plaintiff lived in Mt. Vernon, Westchester county. As soon as the certificate was issued the local agent or legal representative of the company began collecting monthly payments and continued to do so throughout the accruing of the twelve monthly payments in question. The claim that four months are in default is unfounded in view of the action of this local agent. The association clearly waived prompt payment.

After the plaintiff had rested, the defendant swore one Frederick J. Weiss, who testified that he was assistant secretary of the defendant and had the custody of the records, and that he examined the papers of the company as to Mr. Hoyt, the plaintiff, and found nothing except the application blank and this card already in evidence. Mr. Bacon, counsel for the company, then offered in evidence the pass book or card, which was received in evidence and speaks for itself. After the defendant rested the plaintiff's counsel moved to go to the jury, but finally joined with defendant's counsel in moving the court to direct a verdict. The court then said: "It is all a question of law; there is no question for the jury that I can see. I will take, briefs on the question as to whether there was a waiver, and I will direct a verdict later. Hand in your briefs." Later the court directed a verdict for the plaintiff for $146.40.

It will thus be observed that the trial of this case went off simply on the ground of waiver, as disclosed by the payments entered in the pass book or card in evidence.

I am of opinion that the trial judge was right in holding that the evidence amounted to a waiver of all irregularities as to payments which were accounted for by the dilatory methods of the collector of the association, for which the plaintiff was in no way responsible. There is no question of forfeiture in this case.

The account of the interview between plaintiff and the secretary of the association at the general office in New York in March, 1902, does not show that the latter made the slightest objection to the surrender of the certificate. When told by plaintiff that he desired to surrender it, he immediately filled out the usual formal blank for the purpose, and plaintiff signed it; he then demanded the surrender of the certificate and pass book or card, and plaintiff offered to do so on receiving a receipt for the same; this was refused and the interview terminated. A clearer waiver of all other formalities could not have been made. The learned Appellate Division adopted this view, and although the order does not show upon its face that the affirmance was unanimous, neither does it show that any judge dissented.

The judgment appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, VANN and WERNER, JJ., concur with CHASE, J.; HAIGHT, J., concurs with EDWARD T. BARTLETT, J.

Judgment reversed, etc.