## MILWAUKEE MECHANICS INSURANCE COMPANY *v.* FUQUAY.

### Opinion delivered October 18, 1915.

1.  INSURANCE—ACTS OF AGENT—DOUBLE CAPACITY—LOSS BY FIRE.—The agent of an insurance company with power to issue policies, insured certain property on which the bank, of which he was president, held a mortgage for an amount which was small in comparison to the value of the property and the amount of the insurance, and the agent attached to the policy a clause, making the loss, if any, payable to the mortgagee, as its interest should appear. *Held*, in the absence of a showing of fraud or collusion, that the insurance company could not deny liability for a loss, on account of its agent's relation to the mortgagee.

2.  INSURANCE—PROOF OF LOSS—NOTICE.—Where the plaintiff who had suffered a loss by fire, testified that in pursuance of an agreement with the adjuster of the insurance company, that he had mailed estimates of the cost of repairing the burned building, within the time for filing the proof of loss, to the adjuster at his proper address, whether he did so, and whether the adjuster received the same, are questions of fact for the jury.

3. FIRE INSURANCE—NATURE OF BUILDING INSURED.—In the absence of a special provision in the policy on the point, the fact that plaintiff's building was described in the policy as his dwelling house, when in fact he kept some boarders there will not avoid the policy.

4. FIRE INSURANCE—PENALTY—FAILURE TO PAY.—In an action on a policy of fire insurance, held, the plaintiff made a proper demand for payment upon the insurance company, so that the right to the collection of the penalty for non-payment attached.

Appeal from Jefferson Circuit Court; *Antonio B. Grace*, Judge; affirmed.

### STATEMENT BY THE COURT.

J. W. Fuquay filed separate suits in the circuit court against the Milwaukee Mechanics Insurance Company and the Southern States Fire Insurance Company to recover on policies of insurance. The causes of action were consolidated for trial.

J. W. Fuquay owned a dwelling house in Arkansas City, Arkansas, and on the 29th day of July, 1913, the Milwaukee Mechanics Insurance Company issued him a policy on his house for the sum of $3,000; and on the 23rd day of September, 1913, the Southern States Fire Insurance Company issued him a policy for $2,000. Henry Thane, who was at that time and for many years had been president of the Desha Bank & Trust Company as well as a stockholder in the bank, was the agent of both insurance companies and issued the policies to the plaintiff. The Desha Bank & Trust Company held a mortgage on the insured property in the sum of $840, and there was a clause in each policy providing for payment to the Bank as its interest might appear. There is no proof that either of the insurance companies knew that the bank had a mortgage on the property.

On the 29th day of December, 1913, the insured property was destroyed by fire. Fuquay also carried insurance on his personal property. After the fire two insurance adjusters, Mr. Smallwood and Mr. Hirsch, visited Arkansas City for the purpose of adjusting the loss on the personal property. They also signed a non-

waiver agreement with reference to the real property. Fuquay and the two adjusters went to the scene of the fire and examined the burned premises. Smallwood, who was the adjuster for the insurance companies in this suit, directed Fuquay to have estimates made of the cost of rebuilding his house and to send same to him. Pursuant to this direction Fuquay had two firms of contractors make estimates of the cost of rebuilding his house and paid them therefor the sum of $25 each. He attached the estimates made by them to an affidavit made by himself before a notary public in which he stated that the contractors had made the estimates of the loss sustained by him on his residence which was destroyed by fire on the 29th of December, 1913, and that the contractors had offered to rebuild the house for the amounts set out, and that it cost him more than $6,000 to build the said dwelling house.

Fuquay testified that he mailed these estimates together with his affidavit to Mr. T. R. Smallwood, at his address at the Marion Hotel in Little Rock, Arkansas, and that he stamped the letter and placed it in the post office himself. Mr. Smallwood denied that he directed Fuquay to make out these estimates and denied that he entered into any agreement whatever with him looking to the adjustment of the loss on his dwelling house. He also denied that he received the estimates which Fuquay testified he had mailed to him. He admitted, however, that the Marion Hotel was the place where he lived and where his mail was sent. Other facts will be referred to in the opinion. The jury returned a verdict for the plaintiff and the defendants have appealed.

*W. L.* and *D. D. Terry* and *Mehaffy, Reid & Mehaffy,* for appellants.

1. The policies are void because of Thane's interest being adverse to the interest of the insurance companies. 19 Fed. 14; 47 Pac. 511; 111 S. W. 994; 68 N. W. 214; 17 S. W. 83; 40 Pac. 147; 17 N. Y. 421; 92 Ia., 293; 53 S. W. 675; 25 Pac. 331; 54 Neb. 597; 139 N. Y. 146; 56 N. E. 161; 58 N. W. 80; 52 *Id.* 628.

2. No proofs of loss were ever made and there were no waivers by the insurance companies. 84 Ark. 224; 87 *Id.* 171; 91 *Id.* 43; 73 N. Y. 50; 47 S. E. 160; 81 Ill. App. 258; 3 Col. 422. The policy was void for the representation that it was a dwelling house, when it was shown to be a boarding house.

3. Review the instructions and contend there was error, as also in the admission of incompetent testimony and the court's remarks.

*E. E. Hopson* and *J. W. House Jr.*, for appellee.

1. The policies were not void because the Bank, of which Thane was an officer, held a small mortgage. 111 S. W. 994; 68 N. W. 214; 49 L. R. A. (N. S.) 972; 75 S. W. 382. But this defense was waived by the acts of the adjuster. 67 Ark. 584; 53 *Id.* 494; 65 *Id.* 534; 49 S. W. 412; 1 Wood on Ins. § 89; 108 Fed. 497; 101 Ark. 101.

2. Proofs of loss were waived. But proof of loss was mailed to the adjuster. 82 Ark. 226; 94 *Id.* 228; 91 *Id.* 43; 79 *Id.* 475; 99 *Id.* 475; 100 *Id.* 212; 72 *Id.* 365; 77 *Id.* 27.

3. "Dwelling house" used in a policy is not violated because of keeping boarders. 38 Am. Dec. 525; 33 So. 657; 67 Ark. 584.

4. There is no error in the instructions given and none in refusing those asked by appellant. 89 Ark. 111; 94 *Id.* 228; 79 *Id.* 475. Getting up the estimates as requested by the adjuster was equivalent to proof of loss, but if not it was a waiver. 94 Ark. 228; 91 *Id.* 43.

5. The question of waiver was properly submitted to the jury. 91 Ark. 50.

HART, J. (after stating the facts). Henry Thane was agent for both companies with authority to make contracts for insuring property and to write policies of insurance. He wrote and issued the policies of insurance on which these actions are based. At the time he was president of the Desha Bank & Trust Company which held a mortgage for $840 on the insured property. The mortgage clause made the loss, if any, payable to the

mortgagee as its interest might appear. It was not shown that the insurance company had notice that Thane was president of the mortgagee bank at the time he wrote the policies.

(1)    Under these circumstances it is contended by counsel for the defendants that as it was neither alleged nor proved that they had notice that their agent Henry Thane was acting for the bank and its benefit in issuing the policies, they are not bound by his acts. They invoke the rule that no man can faithfully serve two masters whose interests are in conflict. In support of the rule they cite a line of cases which hold that an insurance agent by writing a policy for the company cannot bind it where he himself is the applicant for insurance unless the policy be approved by the company; and also cases to the effect that an agent cannot bind his principal by issuing, without notice to his principal, a policy upon the property of a corporation in which he is an officer. See case note to *Arispe Mercantile Co.* v. *Capital Insurance Co., of Des Moines,* 9 L. R. A. (N. S.) 1084.

The facts do not bring the present case within that rule. Here the insurance agent had no interest whatever in the insured property. The property was insured for $5,000 and it is not claimed that that was an excessive amount. The property was only mortgaged to the bank for $840. The fact that the insurance agent who issued the policy was the president of the bank which held a mortgage for $840 did not prevent the agent from acting with fidelity to the insurance company, and there is no reason whatever to think that the company would have refused the risk had it known that the bank held a mortgage on the insured property.

On the other hand, the amount of the mortgage, as compared with the value of the insured property, was so small that the insurance company might with justice have complained had its agent permitted the business to go elsewhere. So far as the record discloses Thane acted fairly with the insurance company and with the insurer and did precisely what one; under those circum-

stances, would have done with the approval of his principal. No fraud in connection with the matter has been alleged or proved and there are numerous decisions to the effect that the law will never presume fraud where none is shown. Such was the effect of the holding of the Supreme Court of Kansas in *Citizens State Bank of Chautauqua, et al.,* v. *Shawnee Fire Insurance Co.,* 49 L. R. A. (N. S.) 972. In that case this precise question was before the court, and the court held:

"An agent of an insurance company with power to issue policies insured a property on which the bank of which he was cashier held a mortgage for about one-half the amount of the insurance, attaching a clause making the loss, if any, payable to the mortgagee as its interest should appear. Held that, in the absence of fraud or collusion, the company could not deny liability on account of its agent's relation to such mortgagee." See, also, *Fiske* v. *Royal Exchange Assurance Co.,* 100 Mo. Appls. 545, 75 S. W. 382.

Therefore we are of the opinion that Thane rightfully acted for the insurance companies and that the policies sued on were valid.

(2)  It is also contended that the judgment must be reversed because no proof of loss was filed within the time fixed by the policy and that there was no waiver of the same by the insurance company. We think there is testimony from which the jury might have found that the proof of loss was waived. Smallwood was the adjuster of the insurance company and was thereby vested with authority to ascertain the nature, extent and cause of the loss and to agree with Fuquay as to the amount that should be paid as an indemnity for the same. *German Insurance Co.* v. *Gibson,* 53 Ark. 494; *Lord* v. *Des Moines Fire Insurance Co.,* 99 Ark. 476.

Smallwood and Fuquay visited the place where the house had stood. Fuquay testified that Smallwood told him to prepare estimates of the cost of rebuilding the house and that pursuant to his direction he employed two firms of contractors to make such estimates and paid

them for it and that he mailed these estimates, together with his own affidavit as to the amount which the house had cost him and the date of the fire, to the adjuster. It is true the adjuster denied this, but as we have already seen, he had the power to waive the proof of loss and the question of whether he had done so was fairly presented to the jury under proper instructions given by the court.

In the case of *Bluthenthal* v. *Atkinson*, 93 Ark. 252, we held that where a letter has been properly mailed there is a presumption that it was duly received by the person to whom it was addressed but that such presumption may be rebutted. Here Fuquay testified that he mailed the estimates to the adjuster at his proper address before the time for filing the proof of loss had expired and under the decision just referred to the question of whether or not it was received by the adjuster was one of fact for the jury.

(3) It is next contended that the policy was void because the property insured was a dwelling house and the plaintiff used it as a boarding house. The testimony on this point shows that the plaintiff did not keep a public boarding house but that he did keep private boarders from time to time as he saw fit. The keeping of a boarding house is not prohibited by the policy in express terms. There is no reference to a boarding house in the trades or business denominated hazardous or extra hazardous. If the insurance companies have not seen fit to classify boarding houses as exposed to greater risks than ordinary dwelling houses they cannot ask to avoid the policy on this ground. *Rafferty* v. *New Brunswick Fire Insurance Co.* (New Jersey), 38 Am. Dec. 525. See, also, *Birmingham Waterworks Co.* v. *Truss,* 33 So. 657.

The undisputed evidence in the case before us showed that the property insured was the plaintiff's dwelling and the fact that he sometimes kept boarders does not destroy its character as a dwelling.

It is next contended that the policy should be avoided because the plaintiff kept oil in greater quantities than was permitted by the company. The adjuster had a list

of the articles kept in the house by the plaintiff at the time he directed him to send him the estimates above referred to. The question of the waiver of forfeiture on this account was submitted to the jury under proper instructions.

(4) Finally it is contended by counsel for the defendants that the penalty should not be recovered because no demand was made of them for the insurance money. We do not agree with them in this contention. We have already concluded that Thane rightfully acted as agent for the insurance companies. The record shows that he made demand of the company for the amount due under the policies and that the insurer himself made demand therefor by sending in the estimates as requested by the adjuster and that the company absolutely refused payment of the policies.

Other assignments of error are pressed upon us for a reversal of the judgment, but without discussing them in detail, we deem it sufficient to say that instructions embodying the principles of law above announced were given to the jury which fully and fairly submitted the respective theories of the parties.

The judgment will be affirmed.