TWIN CITY FIRE INS. CO. v. STOCKMEN'S NAT. BANK OF FT. BENTON, MONT.

HOME INS. CO. OF NEW YORK v. SAME.

(Circuit Court of Appeals, Ninth Circuit. October 27, 1919.)

Nos. 3297, 3299.

1. COURTS ⬳342—RECOVERY IN ACTION AT LAW ON ORAL ASSIGNMENT WITHOUT REFORMATION OF POLICIES.

Granting recovery on fire policies on the theory that agreement between owner of equity of redemption and insurer's agent that the policies should be assigned to the purchaser at sheriff's sale then and there accomplished such assignment, and that a writing contemplated would have been only a record and evidence of such assignment does not involve a reformation of the policies, or the affording of equitable relief, without the power of a federal court in an action at law.

2. APPEAL AND ERROR ⬳197(3)—OBJECTION TO VARIANCE NOT RAISED BELOW.

Variance between complaint and proof, not brought to the attention of the trial court, is not available in the reviewing court.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. INSURANCE ☞393—ESTOPPEL TO ASSERT NONINDORSEMENT OF CHANGE OF THE LOSS PAYABLE CLAUSE OF POLICY.

Insurers are estopped to allege that modification of terms as to whom loss was payable was not indorsed on the policies; their agent having had authority and been directed by them to make the indorsement, and he retaining the policies till after the fire, having given those interested to understand that this had been done.

4. INSURANCE ☞665(8)—EVIDENCE SHOWING WAIVER OF NOTICE AND PROOF OF LOSS.

Evidence as to statement and conduct by insurers' local agent and adjuster held to sufficiently show waiver of notice and proofs of loss.

5. INSURANCE ☞376(2)—SCOPE OF PROVISION FOR INDORSEMENT ON POLICY OF WAIVER.

Clauses in policies, prohibiting waiver unless indorsed thereon, refer only to provisions which enter into the contract of insurance, and do not affect conditions which are to be performed after loss, as furnishing proofs of loss and giving notice.

6. INSURANCE ☞585—MANNER OF WAIVING PROOFS OF LOSS.

Notice and proofs of loss may be waived by express words, or by conduct inconsistent with intention to enforce strict compliance with the conditions therefor, and calculated to lead insured to believe insurer does not intend to require such compliance.

7. INSURANCE ☞556(2)—AUTHORITY OF ADJUSTER TO WAIVE PROOFS OF LOSS.

An adjuster, sent to adjust a loss, presumably has authority to waive proofs of loss.

8. INSURANCE ☞629(2)—PLEADING ISSUANCE OF POLICY NOT PLEADING DELIVERY.

Allegation of complaint that the fire policies were issued does not embrace one that they were delivered, and so does not estop plaintiff to show there was no delivery.

9. INSURANCE ☞388(3)—EFFECT OF SHERIFF'S SALE ON POLICY WAIVED.

Fire policies are not rendered null by sheriff's sale of the insured property; the insurers knowing of the proceedings and waiving all objections thereto by instructions to their agent to attach new loss payable clauses, making loss payable to purchaser.

10. INSURANCE ☞81—POLICIES NOT VOIDED BY AGENT'S INTEREST.

Contingent interest of insurer's agent in the insured property does not render the policy written by him thereon null and void, but at most voidable.

11. INSURANCE ☞115(5)—RIGHT TO REDEEM AN INSURABLE INTEREST.

The right to redeem is an insurable interest, especially where by understanding of all parties the debt of the mortgagor continued to exist, and the holder of the sale certificate held it as security, and this, though mortgagor's right of redemption be not subject to execution.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Actions by the Stockmen's National Bank of Ft. Benton, Montana —one against the Twin City Fire Insurance Company, and the other against the Home Insurance Company of New York. Judgments for plaintiff, and defendants bring error. Affirmed.

Freeman & Thelen, of Great Falls, Mont., and Nathan H. Chase, of Minneapolis, Minn., for plaintiffs in error.

Norris, Hurd & McKellar, of Glasgow, Mont., for defendant in error.

Before ROSS, MORROW, and HUNT, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

PER CURIAM. The defendant in error was the plaintiff in two actions in the court below, one against the Twin City Fire Insurance Company and one against the Home Insurance Company, to recover on policies of fire insurance. The Saco Hotel Company mortgaged its hotel property to the Homebuilders' Investment Company, and on July 13, 1916, in a suit to foreclose the mortgage, a decree was entered for the sum of $14,369.60, and an order of sale was made. The property was advertised to be sold on August 17, 1916, but at the instance of Dunbar and Rider, two of the stockholders of the hotel company, the sale was postponed. On the date last named Dunbar and Rider borrowed $21,000 from the plaintiff on their joint note, secured by some chattel mortgages, and with a portion of the money so borrowed they purchased the Homebuilders' judgment, taking an assignment of the same in the name of the plaintiff, as additional security for its loan of $21,000. On September 2, 1916, Armstrong, who was president of the hotel company, recovered a judgment against that company for $9,089.62. There was included in the judgment certain notes given by the hotel company to Armstrong, Dunbar, and Rider for money advanced by them to pay for furniture for the hotel and a note of $1,675 given to the First National Bank of Saco for money borrowed; the notes having been assigned to Armstrong for the purpose of suit.

In November, 1916, a meeting of the directors of the hotel company was had, to discuss the question whether the hotel property should be sold under the Homebuilders' judgment or a receiver should be applied for. The former course was adopted. The attorneys for Dunbar and Rider inquired if the plaintiff would consent to the sale, and stated that it might be well to have the property bid in in the plaintiff's name. Dunbar and Rider controlled the Homebuilders' judgment, and also an interest of $3,277.98 in the Armstrong judgment, and had to their credit in the plaintiff's bank about $6,500, balance of the $21,000 which they had borrowed. Shortly thereafter Rider assigned his interest in the Homebuilders' judgment to Dunbar. On December 7, 1916, when the hotel property was about to be sold at sheriff's sale, Skjerseth, the defendant's local agent at Saco, made, executed, and issued the policies in suit, to take effect December 14th. The loss payable clause in the policies ran to the Homebuilders' Company without instruction from the hotel company, following the prior policies. Upon executing the policies, in accordance with the usual custom, daily reports were mailed by the agent to the home offices of the defendants, containing duplicates of all riders and writings attached to policy contracts as issued. At that time Skjerseth knew the financial condition of the hotel company, and knew that it was unable to bid in the hotel property at sheriff's sale. On December 29, 1916, the hotel real and personal property was sold at sheriff's sale, the personal property was bid in by the plaintiff for $1,000, the real estate was first sold to satisfy the Armstrong judgment, and bid in for $50 by Dunbar, and immediately thereafter it was again sold to satisfy the prior judgment of the mortgagee, which had been

assigned to plaintiff, and was bid in by plaintiff at $24,000, to protect the plaintiff and Dunbar and Rider. After paying plaintiff $14,369.60 and interest and costs, the sheriff paid the balance of $9,341.76 to Armstrong's attorney in satisfaction of the Armstrong judgment. The right of redemption remained in the hotel company and in Dunbar.

Shortly after the sale Armstrong used a portion of the money so received by him in paying the Saco Bank the amount of its note, which had been merged in the Armstrong judgment. In the meantime, about December 7, 1916, the hotel company not knowing that new policies had been executed, decided to renew the insurance, and the secretary of the company went to the Saco Bank for that purpose. He was there informed that the policies had issued, and he was told the amount of the insurance and the amount of the premium. Before the sheriff's sale, the defendants' agent agreed with the hotel company, acting by Rider, that after the sale the policies should be assigned to the purchaser. Subsequent to the sale it was again agreed between the agent's assistant in the Saco Bank and Dunbar and Rider on behalf of the hotel company that the policies would be assigned to the purchaser. On February 17, 1917, Dunbar paid the premiums on the policies at the demand of Dychtowicz, the assistant agent. Dychtowicz entered into correspondence with the defendants and the plaintiff, inquiring whether the policies should not be payable to Dunbar as insured, and loss payable to plaintiff as mortgagee, and received affirmative answers. He then wrote Armstrong, the president of the hotel company, asking him to come to the bank and assign the policies. Armstrong went to the bank, and the assistant informed him that the papers were "fixed." He again went to the bank with Dunbar, and they were told by Dychtowicz that the papers were fixed. Dychtowicz denied these conversations, and denied that Armstrong came to the bank; but it was shown that others acted for the defendants at the bank, and it is possible that some other employé of the bank acted in this instance.

As a matter of fact, no assignment was made and no loss payable clause to the plaintiff was attached to the policies. The policies remained in the hands of the agents, as also had remained the preceding policies, which had expired. On February 28, 1917, the hotel was destroyed by fire. The loss was total and in excess of the insurance. The policies contained the provision that no agent had power to waive any provision or condition thereof, unless such waiver be indorsed thereon, and that unless otherwise provided by agreement so indorsed the policies would be void if foreclosure proceedings were commenced, or notice given of sale, or if any change should take place in the insured's interest, title, or possession; that, fire occurring, the insured should give immediate notice of any loss in writing to the insurers, and within 60 days should render statements to the insurers, signed and sworn to by the insured, stating all the latter's knowledge and belief of the time and origin of the fire, interests, incumbrances, other insurance, etc., and that no action upon the policies should be sustainable until the insured had complied with

all such requirements. On June 20, 1917, the defendants directed the plaintiff's attention to the 60-day clause, and advised it that no proofs had been furnished, and denied their liability. The defendants retained the premiums until late in July, 1917, when they tendered them to Dunbar, who refused them. The hotel company assigned its claims on the policies to the plaintiff. On the trial in the court below a jury was waived in each case, and the court, upon the issues and the evidence, made a general finding for the plaintiff, on which judgment was entered.

[1, 2] The defendants rely upon the fact that the loss payable clause in each policy ran in favor of the Homebuilders' Company. which they say possessed no interest in the property at the time when the policies were renewed, of which fact the defendants' agent was aware, and upon the fact that, although the defendants notified their agent, a few days prior to the fire, to have the policies issued to Dunbar, and new loss payable clauses attached in favor of the plaintiff, nevertheless nothing was done, and at the time of the fire, the policies remained in the same form as when issued, and they point to the fact that there is no prayer in the complaints for reformation of the policies or for equitable relief, and invoke the rule that a federal court cannot afford equitable relief in an action at law, as is permitted under the Codes of some of the states.

We do not understand that the court below by its decree attempted to reform the policies, or to afford relief that could not be obtained in an action at law. The court was of the opinion that the oral agreement between the hotel company and the defendants' agent that the policies should be assigned to the plaintiff then and there accomplished such assignment, and that, although a writing was contemplated, it would have been but a record, and evidence of the previous assignment, rather than itself the assignment, and held that the hotel company, possessing a right of redemption, had an insurable interest. If there was variance between the allegations of the complaint and the proofs, that fact cannot avail the defendants in this court, for the reason that no such variance was brought to the attention of the court below. Roberts v. Graham, 6 Wall. 578, 18 L. Ed. 791; Insurance Sav. Bank v. Anglo-American Co., 189 U. S. 221, 23 Sup. Ct. 517, 47 L. Ed. 782; Preiss v. Zitt, 148 Fed. 617, 78 C. C. A. 56; Phœnix Securities Co. v. Dittmar, 224 Fed. 892, 140 C. C. A. 336.

[3] We are of the opinion that the defendants are estopped to allege that the modification of the terms of the policies making loss payable to the plaintiff and the hotel company were not evidenced by writing indorsed thereon. Their agent, Skjerseth, had authority to make such indorsements, and he had specific instructions from the defendants so to do. The defendants admit that he was their duly appointed and acting agent at Saco, and as such agent duly authorized to solicit the business of fire insurance, and to write, countersign, and issue policies of fire insurance for the defendants and collect the premiums therefor. He retained the policies in his possession, and the plaintiff was lulled into security in the belief, based upon the express

information which it received, that the indorsements had been made. Said the court below:

"It is putting it mildly to say that the course pursued by defendants is significant and astonishing. They and all others interested clearly intended and agreed that the insurance should be in behalf of whomever at the time was exposed to loss. They were the blunderers; and yet, with knowledge of the situation and of the insured's ignorance, they withhold information and lull the insured into inactivity and sense of security until the time limit expires, and then, and only then, deliver the policies, repudiate liability, and return premiums."

The salient facts are that on February 16, 1917, Dychtowicz wrote to the plaintiff, inquiring whether the insurance should be placed in the name of Dunbar, with loss payable clause to the plaintiff, or whether it should be placed in the name of the plaintiff only, to which the plaintiff answered that the policies should be made in the name of Dunbar, with clause showing loss payable to the plaintiff. On February 16th Dunbar, on the demand of Dychtowicz, paid the premiums. On February 23d the defendants wrote to Skjerseth, saying that the proper procedure was to have the policies assigned from the hotel company to Dunbar, and new loss payable clause attached, showing that the interest of the Homebuilders' Company had been satisfied or assigned, and that the loss was payable to the plaintiff. Dychtowicz testified that he had no explanation to offer why he did not attach the loss payable clause in favor of the plaintiff during the four days which intervened between his receipt of the defendants' instructions and the date of the fire. There was evidence, however, that in the meantime he gave Dunbar and Armstrong to understand that the matter had been fixed. The fact may possibly be that such loss payable clauses were attached to the policies, notwithstanding that they were not found attached thereto at the time when the policies were finally delivered. However that may be, the defendants should not now be heard to say that their instructions to their agent were not in fact carried out.

[4] The evidence sufficiently shows, also, that the defendants waived notice and proofs of loss. About a week after the fire, Rider asked Skjerseth if something ought not to be done about putting in a claim. Skjerseth answered that Mangson, the adjuster, had been there and had declared it a total loss, "and they would pay the insurance." Rider further asked whether he should not have some kind of paper to show that, and Skjerseth said that he was going to fix up "any papers himself." Rider testified that he met Skjerseth again in May, 1917, and that Skjerseth told him not to worry a bit, but that the policies would be paid. When the adjuster went to the plaintiff bank some time in March, he was furnished all the evidence the bank had in the matter, and was told that, if he wanted further proof, the plaintiff would get it. He made no request for further proof. On March 15th Rider and Dunbar, through their attorneys, wrote to the defendants, notifying them of the loss, advising them that the agent at Saco had informed them that all steps relative to notice of loss and inventory thereof had been taken, "and that you were promptly advised of the fire and loss," and inquiring "when we may expect the money." The

Twin City Insurance Company answered that the adjustment of the loss was turned over to Mangson, and the Home Company replied:

"This loss has been duly reported, and our adjuster, Mangson, is working on the matter at the present time, but we cannot state definitely just when the draft will be isued."

On March 19th Skjerseth wrote to the plaintiff:

"The policies are still here, and will be until draft arrives. The adjuster advised that draft in payment will be made payable to the Stockmen's National Bank and the Saco Hotel Company; both parties being interested. * * * The adjuster has been fully advised of all circumstances."

On June 27th the adjuster gave the plaintiff notice that the time for proof of loss had expired, and thereafter in July the defendants each notified the plaintiff that they denied all liability under the policies, assigning no ground for their decision.

[5-7] Clauses in insurance policies, prohibiting waiver unless the same is indorsed thereon, refer only to the provisions which enter into the contract of insurance, and they do not affect conditions which are to be performed after loss, such as furnishing proofs of loss and giving notice. These may be waived, either by expressed words or by conduct inconsistent with an intention to enforce a strict compliance with the conditions, and which conduct is calculated to lead the insured to believe that the insurer does not intend to require such compliance. Insurance Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689; Burlington Ins. Co. v. Lowery, 61 Ark. 108, 32 S. W. 383, 54 Am. St. Rep. 196; Wheaton v. Insurance Co., 76 Cal. 415, 18 Pac. 758, 9 Am. St. Rep. 216; Rokes v. Amazon Ins. Co., 51 Md. 512; 34 Am. Rep. 323; Kenton Ins. Co. v. Wigginton, 89 Ky. 330, 12 S. W. 668, 7 L. R. A. 81; McCollough v. Home Ins. Co., 155 Cal. 659, 102 Pac. 814, 18 Ann. Cas. 862. And an adjuster sent to adjust a loss presumably has authority to waive proof of loss. Slater v. Capital Ins. Co., 89 Iowa, 628, 57 N. W. 422, 23 L. R. A. 181; Popa v. Northern Ins. Co., 192 Mich. 237, 158 N. W. 945; Milwaukee Mechanics' Institute v. Fuquay, 120 Ark. 330, 179 S. W. 497; Lusk v. American Cent. Ins. Co., 80 W. Va. 39, 91 S. E. 1078; Wholley v. Western Assurance Co., 174 Mass. 263, 54 N. E. 548, 75 Am. St. Rep. 314; Teasdale v. Insurance Co., 163 Iowa, 596, 145 N. W. 284, Ann. Cas. 1916A, 591.

[8] The defendants rely upon Northern Assurance Co. v. Grand View Building Ass'n, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, in which it was held that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a policy of insurance, except in cases of fraud or mutual mistake; that it is competent and reasonable for insurance companies to make it a matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms thereof as accepted and delivered; and that, where the waiver relied on is the act of an agent, it must be shown either that the agent had express authority from the insurance company to make the waiver, or that the company subsequently with knowledge of the facts ratified the action of the agent. It is to be said by way of distinguishing that case from the case at bar that here the policies were never delivered to the beneficiaries

until long after the expiration of the time for the performance of all the conditions therein expressed; that the defendants here, after receiving information from their agent as to the situation of the parties, in writing directed their agent to make the necessary changes to protect the plaintiff.

In the present case, also, the defendants' adjuster and other agents gave the plaintiff to understand that proof of loss was unnecessary, and the defendants ratified such statement so made by their adjuster, by failing to repudiate the statements contained in the letter written to them on March 13th by the attorneys for Rider and Dunbar. They accepted that letter as stating the truth. That the policies were never delivered is made clear by the evidence. From the allegation of the complaint that the policies were issued, it does not follow that they were delivered, and the plaintiff was not estopped by that allegation to show there was no delivery. The complaint alleged that after the sale of December 29, 1916, the insured requested that the plaintiff's interest be shown upon the policies, which were then in possession of Skjerseth, and that at the time of the payment of the premium the policies were still in his possession. On March 19, 1917, Skjerseth wrote to the plaintiff: "The policies are still here, and will be until draft arrives." The draft so referred to was the draft to pay the loss under the policies. In Mutual Reserve Fund L. Ass'n v. Cleveland Woolen Mills, 82 Fed. 508, 513, 27 C. C. A. 212, 217, Judge Lurton said:

"Neither is it competent for the parties to disqualify themselves from ability to agree by parol to any contract which, under the law, need not be in writing, and an agreement in the terms of a policy that no change or alteration thereof shall be valid unless in writing indorsed thereon may itself be charged by parol."

In Ætna Life Ins. Co. v. Frierson, 114 Fed. 56, 64, 51 C. C. A. 424, Judge Lurton, referring to the language above quoted, said that there was nothing in Northern Assurance Co. v. Grand View Bldg. Assn. in conflict with it.

[9] The contention that the policies were rendered null and void by the sheriff's sale of the property, and by the advertisement of the property for sale, is answered by the fact that the defendants were well aware of the proceedings and the sale, and waived all objections thereto by their instructions to their agent to attach new loss payable clauses, making the loss payable to the plaintiff.

[10] The defendants contend that there can be no recovery on the policies, for the reason that at the time of writing the same their agent, Skjerseth, was a stockholder in the hotel company, and was a stockholder and the vice president of the First National Bank of Saco, which bank was an unsecured creditor of the hotel company in the amount of $1,700. The answers allege that these facts were unknown to the defendants until shortly prior to their denial of liability. The facts so alleged were put in issue by the replies. The evidence was that Skjerseth had been a stockholder of the hotel company, that in the spring of 1916 he sold his stock at its par value, and orally agreed with the vendee to stand back of the shares for

their face value. While his oral guaranty was not enforceable, we will assume that Skjerseth intended to make it good, and that he was therefore to that extent interested in protecting the hotel company's property. His interest in securing payment of the $1,700 note, which the local bank of Saco held against the hotel company, was extinguished by the payment of that note early in January, and prior to the time when the plaintiff's interest in the policies attached. There is no evidence to show whether the defendants were or were not aware of the reason which their agent had for protecting the insured property at the time when the policies were written, nor is there evidence as to when or how they acquired such information when they did acquire it, as they say they did before they denied liability under their policies.

The defendants in error cite cases which hold that an agent of the insurance company may not write insurance on his own property without the knowledge or consent of his principal. We have examined the cases so cited, and others, and we reach the conclusion that the true doctrine is as stated in 14 R. C. L. 873:

"It is well settled that an agent of a fire insurance company is not authorized to write a policy on his own property, nor can he bind his principal by issuing a policy to a corporation of which he is an officer and stockholder, unless his act in issuing the policy involves no breach of duty to either party. However, a policy issued by a fire insurance agent to himself is not absolutely void, but is merely voidable at the option of either party."

Among the cases holding that the contract is not void are Mercantile Co. v. Insurance Co., 141 Iowa, 607, 120 N. W. 122, 133 Am. St. Rep. 180; British Am. Assur. Co. v. Cooper, 6 Colo. App. 25, 40 Pac. 147; Pratt v. Dwelling House Ins. Co., 130 N. Y. 206, 29 N. E. 117; Northrup v. Germania Ins. Co., 48 Wis. 420, 4 N. W. 350, 33 Am. Rep. 815; Hanover Ins. Co. v. Shrader, 11 Tex. Civ. App. 255, 31 S. W. 1100, 32 S. W. 344; Mershon v. National Ins. Co., 34 Iowa, 87; Citizens' State Bank v. Shawnee Fire Ins. Co., 91 Kan. 18, 137 Pac. 78, 49 L. R. A. (N. S.) 972. The case last cited is well reasoned. The agent there was the cashier of a bank. He insured property on which his bank held a mortgage. The court held that, in the absence of fraud or collusion, the company could not deny liability on account of its agent's relation to the property, and that fraud is not necessarily to be presumed from mere duality of relation. The court said:

"Here the fact that the agent was cashier of a bank which held a mortgage for about half the amount of the insurance did not prevent his acting with fidelity to his principal, and there is no reason to suppose that the risk would have been refused, had all the facts been fully disclosed."

In the present case the defendants never attempted to avoid the policies, and never notified the insured that they elected to avoid the same. On the contrary, they made a general denial of liability under the policies, and advised the plaintiff of this defense for the first time when they pleaded it in their answers to the complaints. Their argument here proceeds on the assumption that the contingent interests of their agent in the property insured rendered the contract void ab initio. We hold that the court below would not have been

justified in finding, as requested by the defendants, that Skjerseth's interest rendered the policies "null and void."

[11] We find no merit in the contention that the plaintiff has no interest in the subject-matter of the suit. The hotel company assigned its interest under the policies to the plaintiff, but it is argued that the company had no assignable interest after the foreclosure sale. The court below held that the right to redeem was an insurable interest in any case, and that especially was this so where, as here, by reason of the understandings between the plaintiff, the corporation, and Dunbar and Rider, the hotel company's debt continued to exist, and the plaintiff held the sale certificate as security; the sale not being intended to vest plaintiff with indefeasible title, but merely was a convenient arrangement to further the understanding between the parties, citing Carpenter's Case, 16 Pet. 501, 10 L. Ed. 1044; Insurance Co. v. Stinson, 103 U. S. 29, 26 L. Ed. 473.

It is unquestionably the settled rule that the insurable interest of a mortgagor continued after foreclosure sale and during the redemption period. 14 R. C. L. 916. In Insurance Co. v. Stinson, Mr. Justice Bradley held that the owner of the equity of redemption has an insurable interest equal to the value of the buildings on the lands. We are not convinced that the Supreme Court of Montana has ruled otherwise in Hamilton v. Hamilton, 51 Mont. 509, 154 Pac. 717, where it was held that in Montana the right to redeem after foreclosure sale is a personal privilege, and not a property right, and is not itself subject to sale under execution. It does not follow, however, that the owner of the equity of redemption has not an insurable interest. Although the mortgagor's right of redemption is not subject to execution under the laws of Montana, it is a right of such a nature that the owner thereof may suffer loss by the destruction of the property, and the total risk of loss does not rest alone upon the purchaser at the foreclosure sale.

We find no error. The judgments are affirmed.