## CONCORDIA INS. CO. OF MILWAUKEE v. SCHOOL DIST. NO. 98 OF PAYNE COUNTY, OKL., and three other cases.

### Nos. 162, 197–199.

Circuit Court of Appeals, Tenth Circuit.

April 18, 1930.

Rehearing Denied May 14, 1930.

F. A. Rittenhouse and Hal C. Thurman, both of Oklahoma City, Okl. (Frank E. Lee and·John F. Webster, both of Oklahoma City, Okl., on the brief), for appellants.

Frank G. Anderson, of Oklahoma City, Okl. (Chester H. Lowry, of Stillwater, Okl., and R. M. Rainey, Streeter B. Flynn, and Rainey, Flynn, Green & Anderson, all of Oklahoma City, Okl., on the brief), for appellee.

Before LEWIS, PHILLIPS, and Mc-DERMOTT, Circuit Judges.

LEWIS, Circuit Judge.

These appeals are from judgments on policies covering appellee's three-story brick school building, furniture and fixtures, and insuring the district against all loss or damage by fire. The policies were in the Oklahoma standard form. Comp. Okl. Stat. 1921, § 6767. The issues presented here are raised by demurrers to the amended complaints: (1) Whether the actions were instituted within the time limited by the policies, and (2) whether the requirement of the policies that insured should furnish written sworn proofs of loss was waived and insurers by their acts and conduct estopped to rely on that requirement. A third question, whether the court erred in allowing interest on the amounts recovered, is also presented.

Suits were brought in the State court within twelve months next after the fire, and then removed by appellants to the Federal court. After removal amended complaints were filed. It is contended by counsel for appellants that the amended complaints departed from the originals and stated new causes of action, and inasmuch as the amended complaints were not filed within the twelve months limited by the policies in which actions could be brought, the bar had fallen.

The only difference between the original and amended complaints is, the former

alleged full compliance by appellee with all conditions and requirements of the policies to be kept and performed by it; whereas the latter alleged compliance by appellee with all conditions except the requirement it should furnish 'within sixty days after the fire sworn proof of loss; but as to that, it was alleged the insurers by their acts and conduct, specified in detail, had waived that requirement and estopped themselves. The acts and conduct on which the pleas of waiver and estoppel were based, had occurred prior to the time the actions were instituted in the State court; and of course appellants knew at all times that written and sworn proof of loss had not been furnished to them. It may be conceded, as we do (American Mills Co. v. Hoffman, 275 F. 285), that, if the amendments had abandoned the original causes of action on the policies and had set up entirely different and new causes of action, the point would be well taken,—more than twelve months having expired after the fire before the amendments were filed. But how can that contention be maintained when it clearly appears that the same wrong is made the subject of litigation in both original and amended complaints? In both originals and amendments plaintiff alleged the property insured was wholly destroyed by fire on January 2, 1926, that the policies issued by defendants insuring against loss or damage by fire were then in force and effect, that defendants had failed and refused to pay to plaintiff the loss sustained, and judgments were asked for the amounts named in the policies. The same relief was asked for the same breaches of the same contracts. A cause of action is the subject matter of controversy, the wrong of which a plaintiff complains and for which he asks relief. The Federal statute directing that amendments of pleadings be allowed (U. S. Code, Tit. 28, § 777 [28 USCA § 777]) is remedial in character and has at all times been liberally construed. The extent to which the courts have gone in this respect is illustrated in McDonald v. State of Nebraska (C. C. A.) 101 F. 171, and Mims v. Reid (C. C. A.) 275 F. 177. Moreover, it may be doubted whether good pleading requires a plaintiff to negative the performance of conditions subsequent to the loss to entitle him to recover. The supreme court of Oklahoma has held that it is necessary, Palatine Ins. Co. v. Lynn, 42 Okl. 486, 141 P. 1167; North British & Mercantile Ins. Co. v. Lucky Strike Oil & Gas Co., 70 Okl. 146, 173 P. 845, 22 A. L. R. 398; while the supreme court of New Mexico has held that such conditions go to defeat the liability of the insurer, are matters of defense and have no place in the declaration. Robinson v. Palatine Ins. Co., 11 N. M. 162, 66 P. 535. Again, appellants by their motions to make more definite and certain induced appellee to set up the pleas of waiver and estoppel. They moved that the plaintiff be required to state whether or not it furnished the defendants proofs of loss in the manner and form required by the policies. And then in their answers they plead those parts of the policies relating to furnishing the proofs of loss and alleged that those requirements had never been waived by appellants. Plaintiff's replies reiterated the waivers. The contention seems to be entirely without merit.

The next question goes to the sufficiency of appellee's pleas of waiver and estoppel. Those pleas are challenged as to both law and fact. As to the first it is said, oral waivers of proof of loss are conclusively precluded by the terms of the contracts; and as to the second, the pleas are bad in point of fact. As to the first, certain conditions of the policies are relied on. Those conditions and their requirements are these: If a fire occurred the insured was to give immediate notice of any loss thereby in writing to the company, and within sixty days after the fire render a statement to the company signed and sworn to by the insured stating his knowledge and belief as to the time and origin of the fire, the interest of insured and all others in the property, the cash value of each item and the amount of loss thereon, all encumbrances thereon, all other insurance, a copy of all descriptions and schedules in all policies, any changes in the title, use, occupation, location, possession or exposure of the property since the issuing of the policy, and by whom and for what purpose the building and its several parts were occupied at the time of the fire. That the company should not be held to have waived any provision or condition of the policy by any requirement, act, or proceeding on its part relating to the appraisal or any examination provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by the company, including an award by appraisers when appraisal has been required. No suit or action on the policy for the recovery of any claim shall be sustainable in any court until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months after the fire. In any matter relating to this insurance no person unless duly authorized in writing shall be deemed

the agent of insurer. No officer, agent or other representative of the insurer shall have power to waive any provision or condition of the policy except such as by the terms of the policy may be the subject of agreement endorsed thereon or added thereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached thereto, nor shall any privilege or permission affecting the insurance under the policy exist or be claimed by the insured unless so written or attached.

The last noted provisions are aptly referable to certain contractual obligations assumed by the insurers in the policies. For instance, the policy granted permission to make certain alterations, improvements and repairs and prohibited the making of other and more substantial work upon the building unless permission to do so is specifically covered by endorsement attached to the policy; no gasoline in excess of a certain amount could be kept or used on the premises unless permitted by endorsement on the policy. The building could not be abandoned for school purposes for an indefinite period without written permission endorsed on the policy. Permission was granted to use artificial or natural gas for fuel or light only when supplied through Public Service gas pipes. These all appear to be conditions affecting the insurer's risk, contractual obligations, and could not be waived except in the manner required, that is, by endorsement in writing.

We pass now to a summary of the challenged pleas. The amended complaints alleged that on January 2, 1926, and within two or three hours after the fire had destroyed the building and furniture and fixtures therein, the plaintiff notified appellants' agents of the fire and the extent of the damage and destruction, with the request that they notify their companies. That within two or three days thereafter the appellants selected named persons to represent them and authorized such persons to investigate the fire and make estimates as to the value of the property destroyed and settle for the loss; that these adjusters for the insurers visited the scene of the fire and made examinations as to the value of the property destroyed and the circumstances surrounding the fire, and had plaintiff furnish them with the items of the property destroyed, the plans and specifications of the building, which plaintiff furnished, and requested plaintiff to furnish as-

sistance to a building contractor selected and appointed by the insurers and their adjusters, who was to make estimates of the value of the property destroyed and collect information as to its condition at the time of the loss; that thereafter on the 27th day of February, 1926, which was the 56th day after the fire, the said adjusters and the members of plaintiff's board of trustees held a meeting at the scene of the fire; that said building contractor was at said meeting; that said meeting was held for the purpose of discussing the settlement and adjustment of the loss sustained by plaintiff; that thereupon all of the insurers, acting through their said adjusters and agents, stated to plaintiff's board that they had made full and complete investigation as to the fire and the market value of the building and furniture and fixtures therein destroyed by said fire and had obtained all and the correct information thereon, that there was no question as to the loss upon the furniture and fixtures in the sum of $3,400.00 and that appellants were then and there ready to pay plaintiff that sum for its loss on the furniture and fixtures; that said insurers, through their adjusters and agents, at the same time stated that said building was overvalued and could be replaced for the sum of approximately $53,000, and then offered the sum of approximately $56,000 as full payment for all of the loss to both said buildings and furniture and fixtures destroyed; that plaintiff declined to accept said amount and requested the insurance companies, through their adjusters, to replace said building, this however the insurers refused to do; that plaintiff's board at said meeting contended that the value of the building was $75,000; that the value of the building and its replacement cost were the only matters discussed as to which there was any disagreement; no objection was made at any time that proofs of loss had not been furnished by the plaintiff and there was no request for the same; that the insurers at said meeting, by their conduct in offering to pay the full amount of insurance upon the furniture and fixtures and in offering to pay the sum of $53,000 for the loss of the building, led the plaintiff to believe that the only matter in dispute was the market and replacement value of the building, the appellants contending on the one hand that the market and replacement value was the sum of $53,000 and the plaintiff contending that the value was $75,000, and that by reason of the facts stated appellants waived the furnishing of proofs of loss in strict accordance with the provisions of the policies and are estopped to set

up and claim such failure to furnish proofs; that appellants, through the examinations and efforts of their adjusters and the assistance of plaintiff's board rendered at the request of the adjusters obtained all the information which could have been obtained had proof of loss been furnished in strict conformity to the policies and the said adjusters led the plaintiff to believe that they had all the information desired with reference to said loss.

After giving due consideration to all requirements of the policies to which we have made reference in above summary of their contents, we think the weight of authority is opposed to the contention that waivers of proof of loss in these cases could be made only in writing endorsed upon or attached to the policies. They could not be furnished until after the loss had occurred and liability of the insurers if any had accrued. The requirement was a condition subsequent and only provided means, if accepted as to verity, by which insurers' liability and its extent could be ascertained. But insurers were not bound to accept them, they could make their own investigation of the facts called for in the proof and stand on their conclusions so reached, in disregard of proof furnished. The policies provided that the loss should not become payable until sixty days after satisfactory proof of loss had been received by the insurer. Had the insurers stood by for the sixty days after the fire, during which time the insured might make proof of loss and no proof had been forthcoming, the insured would have been without right of recovery; or had proof been furnished within that time, the insurers, if not satisfied with the proof furnished, still had sixty days within which they could make their own investigation as to their liability and the extent thereof, before the loss became payable. That afforded them ample protection. They chose to ignore both alternatives. They sent their agents and adjusters to the scene of the fire within a few days after it occurred to make investigations and settlement with the insured. They called on the insured for assistance in making their investigations. That assistance was given. Its thoroughness cannot be doubted. All material facts must have been discovered. At least the pleas were broad enough to admit proof they were discovered; and they were full enough to satisfy insurers in making a substantial offer of settlement on the 56th day after the fire—$8,400 less than the judgments recovered. Under a policy with like conditions, in substance, to those here relied on, the Circuit Court of Appeals for the Ninth Circuit said, in Twin City Fire Ins. Co. v. Stockmen's National Bank, 261 F. 470, 476:

"Clauses in insurance policies, prohibiting waiver unless the same is indorsed thereon, refer only to the provisions which enter into the contract of insurance, and they do not affect conditions which are to be performed after loss, such as furnishing proofs of loss and giving notice. These may be waived, either by expressed words or by conduct inconsistent with an intention to enforce a strict compliance with the conditions, and which conduct is calculated to lead the insured to believe that the insurer does not intend to require such compliance. Insurance Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689; Burlington Ins. Co. v. Lowery, 61 Ark. 108, 32 S. W. 383, 54 Am. St. Rep. 196; Wheaton v. Insurance Co., 76 Cal. 415, 18 P. 758, 9 Am. St. Rep. 216; Rokes v. Amazon Ins. Co., 51 Md. 512, 34 Am. Rep. 323; Kenton Ins. Co. v. Wigginton, 89 Ky. 330, 12 S. W. 668, 7 L. R. A. 81; McCollough v. Home Ins. Co., 155 Cal. 659, 102 P. 814, 18 Ann. Cas. 862. And an adjuster sent to adjust a loss presumably has authority to waive proof of loss. Slater v. Capital Ins. Co., 89 Iowa, 628, 57 N. W. 422, 23 L. R. A. 181; Popa v. Northern Ins. Co., 192 Mich. 237, 158 N. W. 945; Milwaukee Mechanics' Institute v. Fuquay, 120 Ark. 330, 179 S. W. 497; Lusk v. American Cent. Ins. Co., 80 W. Va. 39, 91 S. E. 1078; Wholley v. Western Assurance Co., 174 Mass. 263, 54 N. E. 548, 75 Am. St. Rep. 314; Teasdale v. Insurance Co., 163 Iowa, 596, 145 N. W. 284, Ann. Cas. 1916A, 591."

This ruling was adhered to by that court in Alliance Ins. Co. v. Enders, 293 F. 485. The Circuit Court of Appeals for the Sixth Circuit is in accord with the Ninth. In Continental Ins. Co. v. Fortner, 25 F.(2d) 398, 402, it said on the subject:

"It is the prevailing rule that a clause in a policy of insurance prohibiting any waiver unless indorsed thereon refers only to those provisions of the policy which enter into and form part of the contract of insurance, and which may properly be designated as conditions; it has no reference to those stipulations which are to be performed after a loss has occurred, such as giving notice and furnishing preliminary proofs."

This was followed by that court in Firemen's Ins. Co. v. Brooks, 32 F.(2d) 451. The Fifth Circuit, in Home Ins. Co. v. Hightower, 22 F.(2d) 882, 62 A. L. R. 620, cited with approval the opinion of the Ninth Circuit in Twin City Fire Ins. v. Stockmen's

Nat. Bank of Ft. Benton, Mont., 261 F. 470, supra. The Supreme Court, in Royal Ins. Co. v. Martin, 192 U. S. 149, 162, 24 S. Ct. 247, 48 L. Ed. 385, held that proofs of loss were waived where the insured denied its liability or refused to pay in any event. The great weight of authority in the State courts, including those in this circuit, is against appellants. See 26 C. J., pp. 405, 406. Appellants rely on Scottish Union & National Ins. Co. v. Encampment Smelting Co., 166 F. 231, in the Eighth Circuit. The opinion in that case fully supports their contention, but the case seems to stand alone, and its soundness has been seriously doubted in later decisions of that court, to-wit: New York Underwriters' Fire Ins. Co. v. Malham & Co., 25 F.(2d) 415, and Hartford Fire Ins. Co. v. Empire Coal Mining Co., 30 F.(2d) 794, 802.

Judgments were not rendered until January 18, 1929, three years after the fire, and they contain in addition to the sums fixed as damages, interest at the rate of six per cent. per annum from May 2, 1926. The policies allowed sixty days after the fire for proofs of loss, and then sixty days more after receipt of the proofs before the loss became payable. By the contracts the latest due date would be May 2nd, 120 days after the fire. The Oklahoma statutes (section 5977, Comp. Okl. Stat. 1921) provides:

"The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon."

In Morley v. Lake Shore Ry. Co., 146 U. S. 162, at page 168, 13 S. Ct. 54, 56, 36 L. Ed. 925, this is said:

"If the state declares that, in case of the breach of a contract, interest shall accrue, such interest is in the nature of damages, and, as between the parties to the contract, such interest will continue to run until payment, or until the owner of the cause of action elects to merge it into judgment."

In Miller v. Robertson, 266 U. S. 243, 257, 258, 45 S. Ct. 73, 78, 69 L. Ed. 265, we find this:

"Compensation is a fundamental principle of damages whether the action is in contract or in tort. Wicker v. Hoppock, 6 Wall. 94, 99, 18 L. Ed. 752. One who fails to perform his contract is justly bound to make good all damages that accrue naturally from the breach; and the other party is entitled to be put in as good a position pecuniarily as he would have been by performance of the contract. Curtis v. Innerarity, 6 How. 146, 154, 12 L. Ed. 380. One who has had the use of money owing to another justly may be required to pay interest from the time the payment should have been made. Both in law and in equity, interest is allowed on money due. Spalding v. Mason, 161 U. S. 375, 396, 16 S. Ct. 592, 40 L. Ed. 738. Generally, interest is not allowed upon unliquidated damages. Mowry v. Whitney, 14 Wall. 620, 653, 20 L. Ed. 860. But when necessary in order to arrive at fair compensation, the court in the exercise of a sound discretion may include interest or its equivalent as an element of damages."

To the last proposition stated citation is made to Bernhard v. Rochester German Ins. Co., 79 Conn. 388, 65 A. 134, 8 Ann. Cas. 298, and other cases. In the Connecticut case there was the same controversy over the question of waiver of proof of loss as here. There was also an unsuccessful effort to arbitrate and finally the insured sued. The court, in addition to damages found, allowed interest thereon from the preceding date of the defendant's repudiation of liability. This was affirmed as constituting an element of the recoverable damages. The parties having agreed on the date when the loss suffered was payable, we see no reason why the insured should not have interest from that date.

The judgments are affirmed.